Schofield v. Henderson *et al.*

SCHOFIELD v. HENDERSON ET AL.

TURNPIKE.—*Gravel Road.*—*Debts contracted in Excess of Stock.*—*Director not Liable on Contract made by his Successor.*—*Statute Construed.*—An ex-member of the board of directors of a gravel road company organized under the act of May 12th, 1852, 1 R. S. 1876, p. 654, is not liable individually, under section 25 of that act, on a contract in excess of the solvent stock of the company, entered into by the successors of such board.

SAME.—*Protesting Director not Liable.*—A member of a board of directors contracting such a debt over his protest and without his consent is not liable thereon individually, even though his protest was merely verbal.

SAME.—*Assessments are Part of Stock.*—*Articles of Association.*—Assessments of benefits to lands, as well as the stock subscribed, constitute solvent stock, though the aggregate exceed the amount of stock specified in the articles of association.

From the Morgan Circuit Court.

*G. W. Grubbs, M. H. Parks, G. A. Adams, F. P. A. Phelps* and *J. M. Coleman,* for appellant.

*W. R. Harrison* and *W. E. McCord,* for appellees.

HOWK, J.—In this action, the appellant sued the appellees, in a complaint of two paragraphs. In the first paragraph, he alleged, in substance, that on the —— day of ——, 1869, in Morgan county, Indiana, there was organized, under and pursuant to the laws of this State, a corporation known as " The Martinsville and White River Valley Gravel Road Company," for the location and construction of a gravel road from Martinsville to Stotts Creek, in said county; that, at the organization of said company, the appellees were duly elected its directors, and were charged with the duty of locating and constructing its road, and thereafter continued to act as such directors until the —— day of October, 1871, and until said road was fully completed; that, by its articles of association, the capital stock of said company was fixed at the sum of ten thousand dollars; that said company, not having a stock subscription sufficient for the construction and com-

pletion of its road, through its directors, the appellees, presented its petition to the board of commissioners of said county, praying for an assessment of the benefits to each tract of land, within one and a half miles of its road, from the location and construction thereof; that thereupon such proceedings were had as that such an assessment of benefits was duly made and reported to said board; that the solvent stock of said company, including subscriptions and assessments, amounted to about the sum of ten thousand dollars, and no more, being the amount fixed by the articles of incorporation of said company; that, on the ——— day of ———, 1870, the appellees, as such directors, by an order made and recorded in the proper books of said company, directed, authorized and provided for the issue of five thousand dollars in bonds of said company, to meet and discharge its indebtedness, and to provide means for the construction and completion of its road; that on the ——— day of June, 1870, the appellees, as such directors, by their further order duly recorded, provided for and authorized an additional issue of bonds of said company, to the amount of five thousand dollars, for a like purpose; that all of said bonds so authorized were issued and became valid obligations of said company, and were placed on the market and sold to *bona fide* purchasers as such, and were tendered to and received by creditors of said company in discharge of their claims for work done and materials furnished, upon the contract and employment of said directors and their agents, in the construction of said road; that the appellees, as such directors, also authorized and provided for the issue of, and issued, the orders of said company, directing its treasurer to pay to the bearer on presentation the sums specified therein; that, of said orders, there was issued the sum of $7,500.00, all of which were offered to and received by the creditors of said company for work done and materials furnished in the

construction of said road ; that the whole amount of bonds and orders of said company, so issued to its creditors by the appellees, as such directors, for work done and materials furnished in the construction of said road, was $17,-500.00 ; that the said bonds and orders were so issued to the creditors and laborers of said company, by the appellees, as such directors, with full knowledge that the solvent stock of said company amounted to $10,000.00, and no more, as provided in its articles of association ; that, of said bonds and orders, there had been redeemed and cancelled the sum of ten thousand and ———— dollars, being the full amount of the solvent stock of said company, as provided in its articles, leaving outstanding and unpaid, of said bonds and orders, the sum of $7,000.00, for the payment of which there remained no assets nor stock of or belonging to said company ; that the said company was, and had been since the completion of its road, insolvent ; that its stock and assessments were exhausted, its treasury was empty, and its road-bed and franchises were mortgaged to the First National Bank of Martinsville for their full value, having no assets nor property out of which the outstanding bonds and orders could be paid ; that there was issued to the appellant, in said bonds and orders, by said directors, for work done and materials furnished in the construction of said road, the sum of about $1,200.00, upon which he had theretofore taken judgment in the circuit court of said county, which judgment remained wholly unsatisfied ; and that said bonds were so issued to the appellant, after the solvent stock of the company had been exhausted, and after the bonds and orders of the company, already issued, had equalled and exceeded its solvent stock.

The second paragraph of the appellant's complaint contained substantially the same allegations as those in the first paragraph.

The appellant demanded judgment against the appellees,

Schofield *v.* Henderson *et al.*

and each of them individually, in the sum of twelve hundred dollars, to be levied of their individual property, and for other proper relief.

To the appellant's complaint, the appellees answered in three paragraphs, of which the first was a general denial, and each of the other two paragraphs stated affirmative matters, by way of defence. The appellant's demurrer to the second paragraph of answer, for the alleged insufficiency of the facts therein, was overruled by the court, and to this decision he excepted. He then replied, by a general denial, to the second and third paragraphs of the appellees' answer.

The issues joined were tried by the court, and a finding was made for the appellees, the defendants below. The appellant's motion for a new trial having been overruled and his exception saved to this decision, judgment was rendered by the court on its finding; and the appellant duly filed his bill of exceptions, containing the evidence introduced on the trial, and appealed from the judgment rendered to this court.

The appellant has assigned, in this court, the following decisions of the circuit court as errors:

1. The overruling of his demurrer to the second paragraph of the appellees' answer;

2. The overruling of his motion for a new trial.

We will consider and decide the several questions arising under these alleged errors, in the order of their assignment.

1. The second paragraph of the appellees' answer was an answer only to the second paragraph of the appellant's complaint. In this second paragraph of answer, the appellees admitted that they, as directors of said corporation, issued the bonds described in the complaint, and they said that, at said time, the amount of bonds issued did not exceed the solvent stock of said company; but they said, that

on the —— day of ——, ——, their terms of office, as directors of said corporation, expired, and that a new board of directors was elected, and the appellees, at said date, ceased to be or to act as such directors, except as to two of the appellees, Egbert and Tarleton, who at said date became their own successors by re-election, and entered with the new board upon their duties as such directors; that up to the time of the retirement from office of the first board of directors, to wit, the said date of ——, 18—, the bonds issued by said directors were not in excess of the solvent stock of said corporation, and that no payments of any kind had been made upon bonds issued in excess of said solvent stock; that, after the said last named date, the said new board proceeded to and did issue certain bonds, in the amount of $——, as in said complaint set out, in excess of the solvent stock of said corporation, but that the same were issued against the consent and over the protest of said Tarleton and Egbert; that said new board afterward proceeded to pay said bonds so issued in excess as aforesaid, leaving the appellant's bonds unpaid; and the appellees say that such payments were made, over the protest and objections of said Tarleton and Egbert, and against their consent; and the appellees denied every material allegation of said paragraph inconsistent with said answer. Wherefore, etc.

It will be seen from the summary of the appellant's complaint, set out in this opinion, that his cause of action against the appellees is founded upon the provisions of section 25 of "An act authorizing the construction of plank, macadamized, and gravel roads," approved May 12th, 1852. This section reads as follows:

" Sec. 25. The directors of any company that may be formed under the provisions of this act, shall be liable in their individual property for any debt they may contract in the name of the company, over and above the solvent stock of such company." 1 R. S. 1876, p. 662.

This section of the statute, it will be observed, is penal in its provisions, and therefore it must be strictly construed. Certainly, it can not be so enlarged by construction, as to make it applicable to a case not within the letter of the statute. It is said by the appellant's counsel, in commenting upon the second paragraph of the appellees' answer, "that a protest and objection by any part of the board of directors will do them no good, as the statute makes no provision for any such protest and objection." In coming to this conclusion the learned counsel, as it seems to us, place a narrow and rigid construction upon the statute, which we are not inclined to adopt.

The doctrine of vicarious punishment, as between man and man, a rule which will punish one man, either in person or property, for another's sins, whether of omission or commission, is not in harmony, we think, with our laws and institutions. Possibly, it may be within the power of the Legislature to provide by law, that the property of one man shall be liable for a debt resulting from the act of another man, when the former did not participate in, nor authorize, the act in question, and when it was done not only without his consent but over his protest and objections against such act. When the Legislature may enact a statute containing such provisions, it will be time enough for this court to consider and decide upon the force and effect thereof. We are satisfied that the section of the statute now under consideration can not reasonably be, and ought not to be, so construed as to render the directors who did not make the contract in the name of their company, but protested against it and objected thereto, liable in their individual property for any debt growing out of such contract. The plain letter of the statute subjects only the directors who may contract a debt over and above the solvent stock of their company, in its name, to the penalty of an individual liability therefor. We must decline to

provide, by construction merely, that the directors who did not contract the debt, but protested against and objected to such contract, shall also be liable in their individual property for such debt.

But it is claimed by the appellant's counsel, that this second paragraph of answer was bad, on the demurrer thereto, because it did not show that the protest and objections of the appellees Tarleton and Egbert, mentioned in said paragraph, had been reduced to writing and signed by them, and entered of record in the proper books of the company. It may be conceded, that it would have been the better course for Tarleton and Egbert to pursue, to have had an entry made on the proper books of the company, showing that they did not consent to nor join in contracting any debt over and above the solvent stock of the company. It was not necessary, however, that they should have made a formal written protest against, or have presented their written objections to, the action of the other directors, or that such protest and objections should have been recorded in the books of the company. Under the statute, as we construe it, the important fact for them to aver, in their line of defence, was, that they, as directors, did not contract, nor consent to or concur in contracting, in the name of the company, any debt over and above the solvent stock of the company. This fact was, we think, substantially alleged in the second paragraph of the answer, and it was not necessary, as it seems to us, that the paragraph should have shown that they had reduced this fact to writing, or signed the same, or had it recorded in the proper books of the company.

In another point of view, it seems to us that the demurrer to this paragraph of answer was correctly overruled. It was the answer not only of Tarleton and Egbert, but of all the defendants to the action, five in number. As to three of these defendants, Henderson, Stafford,

and Radford, the paragraph certainly stated facts sufficient, if true, and the demurrer conceded their truth, to constitute a good defence to the action ; for, as to them, it was alleged that their terms of office had expired, and they had ceased to be directors of the company, and their places, as such directors, had been filled by their successors in office, before any debts had been contracted by the directors, as alleged in the complaint, over and above the solvent stock of the company. Surely these alleged facts, if sustained by the evidence, would have constituted a complete bar to the appellant's action against the defendants Henderson, Stafford and Radford.

In our opinion, therefore, the court committed no error in overruling the appellant's demurrer to the second paragraph of the appellees' answer.

2. In the appellant's motion for a new trial, the only causes assigned therefor were, that the finding of the court was not sustained by the evidence, and that it was contrary to law. The only question, therefore, presented for our decision by the second alleged error, is whether or not the finding of the court, in this case, was sustained by any legal evidence. As we have often said in other cases, where the like question has been presented in the like manner for our decision, we must say in this case, that, if there is legal evidence in the record which tends to sustain the finding of the court on every material point, this court can not and will not disturb the finding upon the mere weight of the evidence. *Cox* v. *The State,* 49 Ind. 568 ; *Swales* v. *Southard,* 64 Ind. 557 ; and *The Fort Wayne, etc., R. R. Co.* v. *Husselman,* 65 Ind. 73. In the case now before us, a careful examination of the record has led us to the conclusion, that the finding of the court was fairly sustained by the evidence on every material point, and was not contrary to law.

It has seemed to us, from our examination of the record

of this cause, that the suit was brought, and has been prosecuted, upon the theory that the appellees, as the directors of the gravel road company, were in some manner bound and concluded by the statement of the amount of the capital stock of the company, in its articles of incorporation, and that they could not be permitted to show that the solvent stock of the company was in fact in excess of the amount specified in said articles. This theory was the central idea of the appellant's complaint, as will be readily seen from the summary thereof, set out in this opinion. The theory is erroneous, as it seems to us. At the time the company was incorporated, and, indeed, until March 13th, 1875, when it was repealed, the act of May 14th, 1869, authorizing the assessment of lands for plank, macadamized and gravel road purposes, was in force and constituted a part of the law under which said company was organized. 3 Ind. Stat. 538. By the 1st section of this act any such company, having a valid and solvent subscription of at least three-fifths of the estimated cost of the construction of its road, was entitled to the benefit of the assessments provided for in said act. The assessments of benefits, under this act, were placed on the same footing as stock subscriptions; and in section 6 of said act it was provided that "Any and all persons having been assessed, shall have all the rights and privileges of any other person who has subscribed a like amount, and all persons having paid such assessment or any part thereof, shall thereby become entitled to a certificate of stock for the same, and have all the rights and privileges of any other person, who has paid a like amount on subscription."

It is very evident, we think, from the provisions of this act, that the assessment of benefits, once made, was in the nature of subscriptions to the capital stock of the company, to the full amount of the assessment. There was nothing in the act which limited the amount of the assessment of

benefits, in aid of any such company, to the amount of capital stock specified in its articles of incorporation. Such assessments of benefits were liens upon the lands assessed, and therefore they were properly to be regarded, we think, as solvent stock to the full amount of such assessments, even though such amount might be largely in excess of the capital stock of the company, as expressed in its articles of incorporation. *Lincoln* v. *The State, ex rel.*, 36 Ind. 161; *The Fall Creek, etc., Gravel Road Co.* v. *Wallace*, 39 Ind. 435.

We find no error in the record of this cause.

The judgment is affirmed, at the appellant's costs.