Holmes v. Kring.

HOLMES *et al.*, *Plaintiffs in Error*, v. KRING *et al.*

1. **Ejectment**: STATUTE OF LIMITATIONS. The statute of limitations can be availed of by the defendant in ejectment without its having been specially pleaded.

2. **Judicial Notice.** Courts will take judicial notice of events constituting a part of the history of the state and the condition of things in time of war.

3. ————. They will take judicial notice of the order of Gen. Ewing, made during the war, and known as "General Order Number 11."

4. **Dowress**: MANSION: RIGHT OF ACTION BY HEIRS. Until dower is assigned, no right of action accrues to the heirs against the widow for the mansion, and messuages belonging thereto, of her deceased husband.

5. ————. The right of action held, in this case, not to have accrued until the death of the widow.

*Error to Cass Circuit Court.*—HON. N. M. GIVAN, Judge.

REVERSED AND REMANDED.

*Gage, Ladd & Small* for plaintiffs in error.

(1) The premises sued for constituted the homestead of James See, and his widow was entitled, after his death, and until her dower was assigned, to the possession of them, as against James See's heirs and every one else. Consequently, the statute of limitations did not begin to run until her death, which occurred in 1876. Prior to that time the heirs had no right of action. 1 R. S., 1855, p. 672, sec. 21; *Stokes v. McAllister*, 2 Mo. 163; *Orrick v. Pratt*, 34 Mo. 226; *Miller v. Talley*, 48 Mo. 503; *Jones v. Manly*, 58 Mo. 564; *State v. Moore*, 61 Mo. 280; *Roberts v. Nelson*, 86 Mo. 25; *Brown v. Moore*, 74 Mo. 633. (2) The fact that James See was not actually in

the house at the time of his death can make no difference,
under the circumstances of this case.    It was at the time
of his death, no less his homestead and mansion-house,
because he was not, under General Ewing's order num-
ber eleven, permitted at that time to enjoy the actual
occupation of it.    *Hamilton v. Boggess*, 63 Mo. 233.
(3)    Of this order and condition of affairs in that part of
the state, at that time, this court will take judicial notice
as a part of the public history of the state.    *Williams
v. State*, 67 Ga. 260 ; *Monroe County Commissioners v.
May*, 67 Ind. 265 ; *Killebrew v. Murphy*, 3 Heisk. 550 ;
*New Orleans Canal Co. v. Templeton*, 20 La. Ann. 141 ;
*People v. Snyder*, 41 N. Y. 398 ; 1 Greenl. on Evid. [11
Ed.] sec. 6.

*A. Comingo* for defendants in error.

(1)    If the possession of Eleanor See was adverse,
open, notorious, etc., and had been for a period of ten
years and more, prior to her death, it invested her with
the legal title to the land.    The fact that she was the
widow of James See, and as such might have claimed a
dower interest, did not deprive her of the right to enter
and claim adversely.    Tyler on Eject. 876–878 ; Free-
man on Cotenancy [2 Ed.] secs. 108, 221–223 ; *Culver v.
Rhodes*, 87 N. Y. 348 ; *Campbell v. Laclede Gas Co.*, 84
Mo. 352 ; *Warfield v. Lindell*, 38 Mo. 561 ; s. c., 30 Mo.
272 ; *Lapeyre v. Paul*, 47 Mo. 586 ; *Alexander v. Ken-
nedy*, 19 Tex. 488.    (2) The declarations of Eleanor See,
while in possession, were competent evidence.    Consid-
ered in connection with her acts, disclosed by the evi-
dence, they tended to explain the character of her
possession.    *Martin v. Bonesack*, 61 Mo. 556 ; *Burgert
v. Borchert*, 59 Mo. 80 ; *Sutton v. Casselleggi*, 77 Mo.
397 ; *Wilson v. Albert*, 89 Mo. 537.    (3) The vice of
plaintiffs' theory consists in the assumption that Eleanor
See could not claim adversely to the remaindermen, in-

asmuch as she was the widow of James, through whom plaintiffs claim to derive title; and that she was consequently compelled to avail herself of her quarantine, and to claim it until dower'should be assigned. This is not the law, as applicable to this case; and she could not have claimed and enjoyed quarantine, in this property, if she had desired. · R. S., 1879, sec. 2205; *McClurg v. Turner*, 74 Mo. 45; also, authorities, *supra*.

NORTON, C. J.—This is an action of ejectment to recover possession of certain lands in Cass county by John See, who subsequently conveyed his interest to one Robert I. Holmes, in whose name the suit was thereafter prosecuted until it reached this court on a writ of error. The answer is a general denial. The suit was commenced against the present defendant and her sister, Louisa E. George, intermarried with one Alfred George. The last two having died after the case reached this court, the cause was dismissed as to them, and said Holmes having also died testate, and having, by the terms of his will, devised whatever interest he had in the lands in controversy in this cause to the above-named plaintiffs in error, James T. Holmes *et al.*, it was, by an order of this court, at its last term, revived in their names.

The land in question was owned by James See, and John See claims it as an heir of said James, and plaintiffs claim through said John. Defendants ·base their claims on continuous adverse possession by Eleanor See, the widow of said James, and by themselves, for more than ten years before suit was brought.

The evidence showed that the land in controversy was situate in Cass county, about three miles from Pleasant Hill; that it was owned by James See at the time of his death, which occurred at Pleasant Hill, at that time a military post: that said James died in the win-

ter of 1863–64, without children, but leaving his widow, Eleanor, surviving him ; that the original plaintiff, John See, was one of his heirs, being the son of a deceased brother ; that, in 1865, said Eleanor, the widow of said James, moved back ( in the language of the witness ) to his farm, their home, where she lived up to the time of her death. The witness further stated that " the fences had been burned during the war, and that she reënclosed the farm ; she made all the improvements on the farm but the house, which had not been burned ; she re-enclosed a part of the farm in 1865 and in 1866, about thirty acres in all ; she made some trifling improvements on the house, and built a barn and stables after her husband's death. Almost every year she added to the farm. The rails were made from timber on the place, and in 1868 she had it all enclosed. She sold timber off the farm, paid the taxes, and received the profits. I don't know that she claimed the land before her husband's death."

At this stage of the case, defendants offered to prove that said Eleanor, the widow, openly and notoriously claimed the land as her own from the time she took possession, after her husband's death, until her death, which occurred in October, 1876. This evidence was objected to on the ground that the defendants had not pleaded the statute of limitations ; that the widow, Eleanor, while dowress for life, could not, by her declarations, elevate her estate into a fee, and that such declarations, claiming the land as her own, were not admissible to show adverse possession, unless they were made known to the heirs of said James See. The objection was overruled and the evidence received, and this action of the court is the first ground of error assigned. The objection that the evidence was not admissible, because the statute of limitations had not been set up in the answer, is not well taken, it having been held in the

case of *Nelson v. Brodhack*, 44 Mo. 596, that, in an eject-ment suit, the defendant could rely on the statute of limitations without pleading it.

In support of the other ground of objection, it is insisted that James See lived upon the land in question till he went to Pleasant Hill, four or five months before his death; that he was compelled, by Gen. Ewing's mil-itary order, No. 11, to remove from his home, and that, notwithstanding such enforced removal, the house still continued to be his mansion-house, to the possession and enjoyment of which, and the messuages, or land, at-tached, his widow, in virtue of her quarantine right, was entitled until dower was assigned her; that she thereby became a tenant in common with the heirs of James See, and that her possession was presumptively friendly, and not adverse, and that it could not become adverse by oral declarations made by her, that she claimed the property to belong to her absolutely, unless made to her cotenant, or unless it was shown that he had knowledge of such claim. In further support of the objection, it is insisted that, as a part of the public history of the state, we can take judicial notice of the condition of things in that part of the state during the war, and of said mili-tary order applying to the counties named in it.

In 1 Greenleaf on Evidence, section 6, it is said courts will generally take notice of whatever ought to be generally known within the limits of their juris-diction. That courts will take judicial notice of such events as constitute a part of the history of the state, and the condition of things in time of war, is sustained by the following authorities: *Killibrew v. Murphy*, 3 Heisk. 550; *New Orleans Canal and Banking Co. v. Templeton*, 20 La. Ann. 141; *Williams v. State*, 67 Geo. 260; *Munroe County Commissioners v. May*, 67 Ind. 265; *People v. Snyder*, 41 N. Y. 398.

There is no more notorious event constituting a part of the history of the state than the following order, No. 11, issued by Gen. Ewing:

"Headquarters District of the Border,
"Kansas City, Mo., August 25, 1863.
"(General Order No. 11).

"First—All persons living in Cass, Jackson, and Bates counties, Missouri, and in that part of Vernon included in this district, except those living within one mile of the limits of Independence, Hickman's Mills, Pleasant Hill, and Harrisonville, and except those in that part of Kaw township, Jackson county, north of Brush Creek and west of the Big Blue, embracing Kansas City and Westport, are hereby ordered to remove from their present places of residence within fifteen days from the date hereof.

"Those who, within that time, establish their loyalty to the satisfaction of the commanding officer of the military station nearest their present places of residence, will receive from him certificates stating the fact of their loyalty, and the names of the witnesses by whom it can be shown. All who receive such certificates will be permitted to remove to any military station in this district, or to any part of the state of Kansas, except the counties on the eastern border of the state. All others shall remove out of this district. Officers commanding companies and detachments serving in the counties named will see that this paragraph is promptly obeyed."

The land in controversy, upon which James See lived, was about three miles from Pleasant Hill, and, by the terms of the order, he was required to move from it in fifteen days. The mansion-house from which he removed, his removal being compulsory, and in obedience to a military order, which he had no power to resist, remained such, and was as much his mansion-house, in contemplation of law, when he died, four or five months afterwards, at Pleasant Hill, as if he had lived and died

in it, it not appearing that he had acquired, or intended to acquire, another.

Under these circumstances, his widow had the right, until dower was assigned her, to occupy and enjoy the mansion-house and messuages belonging thereto. 1 R. S. 1855, sec. 21, p. 672. And, to enforce this right, she could maintain ejectment. *Stokes v. McCallister*, 2 Mo. 163 ; *Miller v. Tally*, 48 Mo. 503 ; *Roberts v. Nelson*, 86 Mo. 25. And her possessory right is such as will defeat an ejectment brought against her. *Jones v. Manly*, 58 Mo. 559.

Under this state of the law, and the evidence in this case, had the heirs of James See brought ejectment against Eleanor, his widow ( dower never having been assigned her), their action would have been unavailing, inasmuch as, until dower was assigned, she was entitled to the possession of the premises ; and, inasmuch as dower was never assigned, a right of action on the part of the heirs of said James See, for possession of the premises, did not accrue till she died. *Brown v. Moore*, 74 Mo. 633 ; *Long v. McDow*, 87 Mo. 197.

Applying the principle of the above cases to the facts in this case, we must hold that the statute only commenced to run after the death of Mrs. See, and, inasmuch as the court tried the case on a theory opposed to the one above stated, the judgment will be reversed and the cause remanded. All concur.