PATRICK FALVEY ET AL. v. MARY AGNES HICKS ET AL., Appellants.

Division One, July 30, 1926.

1. **APPEAL: Dismissal: Failure to Assign Error.** Respondent's motion to dismiss the appeal on the ground that the assignments set out in appellant's brief do not specifically and distinctly state the errors claimed to have been committed by the trial court, as required by Rule 15, will be overruled, where, of the five assignments made, the first is too general, but the second assigns error in the refusal of declarations of law offered by appellants, the fifth assigns error in the giving of declarations offered by respondent, the fourth assigns error in admitting evidence for respondent, and the third is that the decree is against the law and against the weight of the evidence and against the law under the evidence and is for the wrong party; and especially so, where these were substantially the grounds in the motion for a new trial, and appellant's counsel under "Points of Law and Fact" have stated certain contentions made by them under various phases of the evidence and cited authorities in support thereof.

2. **ACTION: At Law or in Equity: Title by Adverse Possession.** A suit in which the principal issue is a claim to land founded on adverse possession, asserted as taken openly and in good faith and maintained for the period of limitation prescribed by statute, is an action at law; and the fact that, in connection with the claim and in the same count a decree in partition is asked, being a mere incident and wholly dependent upon the finding

and judgment under the issue of title, does not convert the case into a suit in equity. Nor does the. fact that the record shows no waiver of a jury, but does show that both sides requested declarations of law, alter the fact that it is an action at law.

3. **ACTION AT LAW: Substantial Evidence.** On appeal from a judgment in an action at law, the finding of the trial court will not be disturbed unless there is an absence of substantial evidence to sustain it, or error was committed in the admission or rejection of evidence, or in the giving or refusal of declarations of law.

4. **LIFE ESTATE: Homestead.** Under the law in force in 1880, upon the death of the owner intestate and without children, his widow became vested with an estate for life in property owned by him and occupied by them as a home.

5. ————: **Tax Sale.** The sale and sheriff's deed, executed in pursuance to a judgment in a suit for taxes brought against the life tenant alone, conveyed to the purchaser the life estate, and no more. Where the life estate was the homestead of a widow, and the suit for taxes was brought against her only, the sheriff's deed under execution conveyed no more than the title and interest she owned.

6. ————: **Interests of Remaindermen.** In a suit for taxes brought against the life tenant alone, the interests and estates of the remaindermen are not affected by a judgment and a sheriff's sale and deed thereunder.

7. ————: ————: **Adverse Possession.** Possession by the purchaser at a tax sale, in a suit for taxes brought against the life tenant only, obtained after the life estate and the estate in remainder had been created and become fixed by operation of law, is not adverse to the remaindermen during the continuance of the life estate, but is adverse only to the life tenant or her grantees, and on her death title by such adverse possession terminates as to the remaindermen, and as to them begins to be adverse only at her death. During the continuance of the life estate a stranger to the title may establish an adverse possession as against the life tenant and thereby acquire title to the life estate, but during the existence of the life estate he cannot establish an adverse possession as against the remaindermen whose interests are vested, so as to bar them of their interests by limitations, for as to remaindermen the Statute of Limitations does not begin to run until the death of the life tenant.

8. **ADVERSE POSSESSION: Instruction.** Where it is admitted or clearly established that there was a vested life estate and a vested estate in remainder, and suit is brought against the remaindermen by purchasers at a tax sale in a suit for taxes brought against the life tenant alone, a declaration of law which entirely ignores the life estate and the time when the possession of such purchasers began, and declares that they are entitled to recover if they have been in open and exclusive adverse possession for ten years, when the life tenant had been dead only nine years when the suit was instituted, is erroneous. A bald declaration of law in such case, clearly declaring that if such purchasers have been in the open and exclusive adverse possession for ten years they are the owners of the land, ignores the law that there could be no adverse possession to the remaindermen during the life of the life tenant, and excludes. a consideration of the pertinent facts.

9. **DECLARATION OF LAW: Mixed Question of Law and Fact: Adverse Possession: Ignoring Life Estate: Inclusion of Defenses.** A court sitting as a jury to try questions of mixed law and fact should give declarations of law applicable to the case. The owner and his wife occupied a lot as a home until his death, intestate and without children, in 1880, and his widow's homestead therein was a life estate until her death in 1912. In 1898 suit for

taxes was brought against the widow alone, judgment obtained, and the land sold under execution and conveyed by the sheriff to plaintiffs, who entered into possession in 1902, and continued in possession thereafter. In 1921, nine years after the widow's death, the plaintiffs, claiming title by limitations, brought suit against the heirs at law of the homesteader, and at the trial without a jury the court gave a declaration of law declaring that if plaintiffs had been in the open and exclusive adverse physical possession for ten years they were the owners, and rendered judgment for them. **Held,** that the declaration of law was not merely non-direction, and the propriety of such a declaration is not to be determined by the rule that instructions to a jury need not in all cases state the defenses, but the question for decision was a mixed one of law and fact, and the declaration excluded consideration of the existence of the life estate, the rights of the remaindermen, the time when the life estate expired, the time when the right of action could accrue to the remaindermen, and the time when the Statute of Limitations began to run against them, and the omission of those elements was error.

10. ———: **Technical Accuracy.** The office of declarations of law being to inform the appellate court as to the theory of law upon which the case was tried and ruled by the trial court, the same nicety of expression is not required in them as in instructions to a jury. If as applied to the evidence they show a correct theory, it is immaterial whether in some respects they are technically incorrect; but if they show that the trial court proceeded to judgment upon a wrong theory, they constitute error.

11. **HOMESTEAD: Dower in Excess.** Where the statutory homestead was eighteen square rods and on that part of the lot of twenty-four square rods was located the dwelling house, and the homestead was worth five hundred dollars at the time of the homesteader's death, his widow was not entitled to dower in the remaining six vacant square rods. It is self-evident that the homestead exceeded her dower of one-third of the entire lot, and where such is the fact the widow under the statute does not have dower in the excess.

12. **DOWER: No Assignment within Ten Years: Quarantine.** Under the revision statute of 1889 (Sec. 4558, R. S. 1889), amending the Act of 1887 (Laws 1887, p. 177) by eliminating both provisos thereof, the widow's dower in real estate became extinct unless she brought a proper proceeding for the assignment of dower within ten years after her husband's death; and as quarantine is an incident of dower it likewise became extinct, although she was during the ten years in possession of and enjoying the mansion house and the messuages and other lands thereto belonging.

13. ———: ———: **Lengthening Time by Quarantine.** The widow's quarantine does not alter the statute which requires her to bring the proper proceeding for the assignment of dower within ten years after her husband's death. Quarantine is only an incident to dower, permitting the widow to remain in possession of lands in which she has dower until dower is assigned; but unless proceedings for the assignment of dower are begun within ten years after her husband's death, her dower becomes extinct, and with its extinguishment goes her quarantine.

14. ———: ———: **Homestead: Life Estate: Remaindermen: Limitations.** Adverse possession of land which is not a part of the widow's lifetime homestead and in which she has unassigned dower and homestead, if begun ten years after her husband's death and continued for ten years, extinguishes the remaindermen's title. The husband died in 1880, intestate and without children, leaving a lot of twenty-four square rods, worth five hundred dollars. Under the statute his homestead could not exceed eighteen square rods, or three thousand dollars in value. His widow continued to occupy the dwelling house and to remain in possession of the extra six square rods, but brought no proceeding to have dower assigned to her

therein. In 1898 suit for taxes against the lot was brought against her alone, and the sheriff sold and conveyed the land under execution issued upon the judgment, and in 1902 the purchaser conveyed the lot to plaintiffs, who entered into possession and were in possession when they brought suit for the entire lot against the husband's heirs at law. The widow died in 1912. **Held,** first, that the widow had a life estate in the eighteen square rods constituting the homestead, and as to it the Statute of Limitations did not begin to run against the remaindermen until her death in 1912, and the plaintiffs acquired no title to the eighteen square rods by adverse possession. **Held,** second, that, as the homestead exceeded the widow's dower, she had no dower in the .extra six square rods, and if she .did her dower therein, and with it her quarantine right thereto, became extinct before 1898 because of her failure to have dower assigned to her, and the remaindermen could have brought suit to oust the plaintiffs from possession of said six square rods at any time after they entered into possession in 1902, and as plaintiffs remained in exclusive possession from 1902, claiming under said sheriff's deed, until this suit was brought in 1921, they have title by adverse possession and limitations to said six square.rods, and as to them the remaindermen are barred.

Corpus Juris-Cyc. References: **Actions,** 1 C. J., Section 174, p. 1044, n. 44; Section 175, p. 1046, n. 82. **Adverse Possession,** 2 C. J., Section 210, p. 124, n. 54; Section 218, p. 129, n. 94, 95; Section 285, p. 159, n. 32; Section 297, p. 162, n. 70; p. 163, n. 74 New; Section 331, p. 172, n. 68; Section 632, p. 283, n. 6. **Appeal and Error,** 3 C. J., Section 1505, p. 1359, n. 52; 4 C. J., Section 2725, p. 775, n. 47; Section 2853, p. 878, n. 82; p. 880, n. 99. **Dower,** 19 C. J., Section 211, p. 534, n. 86; Section 299, p. 559, n. 2; Section 302, p. 559, n. 8, 12. **Estates,** 21 C. J., Section 76, p. 943, n. 32; Section 93, p. 955, n. 69; Section 124, p. 975, n. 49, 50. **Homesteads,** 29 C. J., Section 470, p. 994, n. 18; Section 508, p. 1016, n. 63. **Taxation,** 37 Cyc., p. 1469, n. 13; p. 1474, n. 58; p. 1475, n. 61. **Trial,** 38 Cyc., p. 1948, n. 58, 60, 61; p. 1949, n. 68.

Appeal from Circuit Court of City of St. Louis.—*Hon. Robert W. Hall,* Judge.

REVERSED AND REMANDED.

*W. B. & Ford W. Thompson, J. W. Hays* and *James E. King* for appellants.

(1) The land in question being the homestead of Thomas Connelly at the date of his death, his widow was entitled to a life estate therein. Laws 1875, p. 60; West v. McMullen, 112 Mo. 405. (2) The deed from the sheriff in execution of the judgment for taxes, where the life tenant alone was made party defendant, would convey only the interest of the life tenant. (3) The testimony of the plaintiffs themselves clearly shows that their claim of title is based upon the sheriff's deed, and nothing else, and that the second deed which they procured from Mrs. Conway in 1918, six years after the death of the life tenant, who died August 22, 1912, conveyed nothing, since Mrs. Conway had already in 1902 by warranty deed to them disposed of all right, title or interest which she had obtained by mesne conveyances from the sheriff's deed. (4) No title by adverse possession could begin to run against the remaindermen until the death of the life tenant, the widow. Wells v. Eggers, 259 S. W. 437; Carr v.

Barr, 294 Mo. 673; Hall v. French, 165 Mo. 430; Mathews v. O'Donnell, 289 Mo. 235; Case v. Sipes, 280 Mo. 110; Willis v. Robinson, 291 Mo. 650. This suit was filed by the plaintiffs on August 25, 1921; the widow Connelly died August 22, 1912; the case was tried and judgment entered on June 12, 1922. Therefore the ten-year Statute of Limitations could not have run. (5) The color of title possessed by the plaintiffs and relied upon was the sheriff's deed, and that deed conveyed only the life estate, which was the sole interest of the sole defendant in the tax suit. Vance v. Corrigan, 78 Mo. 98; Land & Lumber Co. v. Moss Tie Co., 87 Mo. App. 176; Taff v. Tallman, 277 Mo. 157. The widow held no record title whatever, the record showing the land in her husband, Thomas Connelly, then deceased.

*William Hilkerbaumer* and *Igoe, Carroll, Higgs & Keefe* for respondents.

(1) There is nothing to consider on this appeal. The assignments of error, if any one of them should be sufficient in form, do not raise the questions discussed in the brief of appellants. There is no assignment of error, nor ground for new trial in the motion for new trial claiming that there is no evidence to support the judgment. Neither number 1 nor number 3 of the assignment of error is sufficient. Vahldick v. Vahldick, 264 Mo. 529; Freck v. Ins. Co., 279 Mo. 156; Nelson v. Cowles, 193 S. W. 579. Number 4 is not sufficient. Machen v Cape Girardeau, 242 S. W. 131. Neither are numbers 2 and 5 sufficient under the authorities cited above. Number 5 is insufficient for the further reason that it is not error that instructions are against the evidence or the weight of the evidence. The assignments of error are merely repetitions of five out of the six grounds stated in the motion for a new trial. (2) The actual and exclusive possession of the premises in controversy by respondents and their predecessors, and the improvement of the same by making permanent additions thereto consisting of additional rooms, flooring, roof, weatherboarding, etc., to the old house and the erection of an entirely new house, sheds, vault, sidewalks, fencing, including a division fence, paying special improvement taxes for streets and sewers, general taxes, conveying the premises by warranty deeds as far back as 1902, mortgaging the same, and many other circumstances, all as shown by the verbal testimony and the exhibits in the record, are not only substantial and ample evidence of the adverse character of the possession, but are convincing, and could lead to no other conclusion than that reached by the trial court. Saucier v. Kremer, 249 S. W. 640; Turner v. Hall, 60 Mo. 271; Swope v. Ward, 185 Mo. 316; Mississippi County v. Vowels, 101 Mo. 225; Dunlap v. Griffith, 146 Mo. 283; Bene v. Miller, 149 Mo. 237; Pharis v. Jones, 122 Mo. 131; 2 C. J., 269 to 275. (3) Title by adverse possession is an independent title and may be set up by any one even as against his own grantor

and those under whom he derives some title and where there is a common source of title. Macklot v. Dubreuil, 9 Mo. 477; Wilcoxson v. Osborn, 77 Mo. 632; Perkins v. Irvin, 200 Mo. 490; Waddell v. Chapman, 238 S. W. 483.

SEDDON, C.—This cause was ruled by this Division of this court in an opinion filed on April 13, 1925. A rehearing was granted, however, and the cause was subsequently orally argued and submitted upon supplemental briefs filed by the respective parties. After rehearing and submission, the case was re-assigned to the writer to prepare an opinion expressing the conclusions and judgment of this court. The original opinion was written by my learned brother and associate, Commissioner LINDSAY, and received the concurring votes of three of the then judges of this Division, Judge ATWOOD not sitting, because he was not a member of this court at the time the cause was originally argued and submitted. The original opinion fairly states the facts and rightly, we think, applies the law to the facts. We are still of the conclusion that the original opinion correctly ruled this appeal in so far as the homestead proper is involved, and it is therefore embodied herein and made a part of this opinion, the writer hereof confining himself solely to a discussion and ruling of the additional points raised by the respective parties upon rehearing. In our original opinion, which is adopted and made a part hereof, this court, speaking through LINDSAY, C., said:

"The plaintiffs, being in possession of certain real estate in the city of St. Louis, brought suit, setting up the provisions of Section 1311, Revised Statutes 1919, and asked for a decree vesting in them title to said real estate, by limitation, under the provisions of said section. The defendants answered, denying generally and specifically the allegations of the petition, made in conformity with said section, and by way of further defense and cross-bill pleaded that one Thomas Connelly acquired title to the premises in fee simple, in August, 1875, took possession thereof, and with his wife, Mary Connelly, occupied the same as his homestead until his death, about the year 1880; that Thomas Connelly died intestate, and had no children, and that there were no children born of the marriage of Thomas Connelly and Mary Connelly; that Mary Connelly, as the widow, was entitled to occupy said premises as a homestead during her natural life and until her death, which occurred August 22, 1912; that thereupon and thereafter the defendants, nephews and nieces, and the only heirs at law of Thomas Connelly, deceased, were entitled to the possession of the premises as tenants in common, and as such entitled to partition. The defendants prayed judgment for possession of said real estate, for the monthly rents and profits, and for a decree in partition. The reply was a general denial, followed by a plea of adverse

possession by plaintiffs for more than ten years, a plea that the cause of action set up by defendants did not accrue within ten years next before the commencement of the action, nor within twenty-four years before the commencement of the action, and a renewal of the plea setting up facts by which it was alleged that defendants were barred under the provisions of Section 1311. Upon the trial plaintiffs dismissed their petition and announced they would try the case, and the case proceeded, upon the cross-bill of defendants and the reply of the plaintiffs, to which defendants filed a general denial. It was shown that the property in dispute was conveyed to Thomas Connelly by a deed made June 28, 1875, executed by the Union National Bank of St. Louis, and at that time the plaintiff's admitted that by said deed he took whatever title had emanated from the Government, but counsel stated that they did not admit any common source of title. Afterward, when the deed made by Bridget Conway to plaintiffs for a part of the lot in controversy (hereinafter referred to) was offered in evidence, the following occurred:

" 'MR. THOMPSON: We want to object to that deed, for this reason, your Honor, that it appears that this party had no title to the property, the grantors, legal or equitable; that the admission in this case is that the title in this property was in Thomas Connelly, and that at the time of his death he left a widow, and that the widow occupied this property as her homestead until 1912, and this deed is made in 1903.

" 'THE COURT: The common source of title was already admitted.

" 'MR. HILKERBAUMER: Our title is based on possession, adverse possession.

" 'THE COURT: The objection will be overruled.'

"The property in dispute is a triangular piece of ground fronting on Hunt Avenue. The dwelling of Thomas Connelly was toward the west end of the lot, and is numbered 4478 Hunt Avenue. This was occupied by Thomas Connelly, with his wife, Mary, as a homestead until the death of Connelly in 1880. The evidence shows conclusively that they had no children, and that Thomas Connelly left no will, and that Mary Connelly continued to live in this dwelling until her death on August 22, 1912. Shortly after the death of Thomas Connelly, Bridget Conway, a sister of the widow, Mary Connelly, with her husband, James, and their two sons and a daughter Mary Conway, came to live with Mary Connelly in this dwelling house. Mary Conway afterwards, in 1900, was married to Patrick Falvey, and she and her said husband are the plaintiffs herein. In 1897 a judgment was rendered in a suit by the Collector of the City of St. Louis against Mary Connelly as defendant for taxes against the property; the property was sold under execution issued on said judgment, and one Nicholas Wilhelm became the

purchaser, and received a sheriff's deed in August, 1898. On September 6, 1900, Wilhelm executed a quitclaim deed to the property to Bridget Conway, and in January, 1902, Bridget Conway and her husband executed a warranty deed for the east twenty-five feet of the lot to the plaintiffs, and in 1903 executed to plaintiffs a warranty deed for an additional strip of five feet. In March, 1918, Bridget Conway executed to plaintiffs a warranty deed for all the property in controversy. The introduction of these deeds, and of the sheriff's deed, was objected to by defendants on the ground that Mary Connelly had only a life estate in the property, and was the sole defendant in the suit for taxes. At this time counsel for plaintiffs announced that their title was based on adverse possession and these deeds were admitted for the purpose of showing that they claimed adversely, and claimed title while in possession.

"In 1902, the plaintiffs erected a dwelling house on the east part of the lot, being the part embraced in the deeds theretofore made to them by Bridget Conway and her husband, and they lived there until about 1911, and after that rented it to others, and collected the rents afterward. They, with Mr. Conway, also enlarged the house on the west part of the lot, the original dwelling of Thomas Connelly. The evidence showed that the general and special taxes on the property had been paid by plaintiffs, and by Bridget Conway after the execution of the deeds mentioned.

"The evidence further showed that there was a fence around the whole of the property for many years, antedating the conveyance to plaintiffs, and that about 1902 the plaintiffs erected a fence across the lot, between the two houses. This suit was filed August 25, 1921, or nine years after the death of Mary Connelly, the widow of Thomas Connelly. The cross-bill of defendants was filed December 9, 1921. Both parties offered instructions in the nature of declarations of law. The court gave the declarations asked by plaintiffs, and refused all those offered by defendants, and rendered judgment in favor of the plaintiffs.

"I. The plaintiffs have filed their motion to dismiss the appeal for failure to comply with the Rule 15, and upon the ground that the assignment of errors set out in defendants' brief **Dismissal** does not specifically and distinctly allege the errors **of Appeal.** claimed to have been committed by the trial court. The brief contains five assignments of error. The first is so general as to be within the rule announced in Vahldick v. Vahldick, 264 Mo. 529, but the second assigns error in the refusal of the declarations of law offered by defendants, the fifth assigns error in the giving of the declarations of law offered by the plaintiffs, and the fourth assigns error in admitting evidence for plaintiffs over defendants'

315 Mo.—29.

objections. The third is, that the decree is against the law and
against the weight of the evidence, and against the law under the
evidence and is for the wrong party. The errors assigned here are
substantially those in the motion for a new trial. Under the head
of 'Points of Law and Fact,' counsel have stated certain contentions
made by them under various phases of the evidence, and have cited
authorities in support thereof. Under the holdings in Kirkland v.
Bixby, 282 Mo. 462, and Osagera v. Schaff, 293 Mo. 333, the motion
to dismiss is overruled.

"II. Counsel for plaintiffs insist here that the suit is one at law,
and therefore the finding of the trial court must be affirmed unless
error, was committed in the admission or rejection of

**Action at Law.** evidence, or in the giving or refusal of instructions. Coun-
sel for defendants insist that it is a suit in equity, and
that the finding is reviewable as such. The defendants claimed title
as heirs at law of Thomas Connelly, deceased, who, it was admitted,
had all the title to the property that had emanated from the Govern-
ment, and claimed that their title was, as remaindermen, subject
to the life estate of Mary Connelly in the property as a homestead.
Plaintiffs' claim was based upon the sheriff's deed to Wilhelm, and
upon adverse possession and the Statute of Limitations. Essentially,
the claim is founded on adverse possession, asserted as taken and
maintained openly, and in good faith. There is no mention in the
record of waiver of a jury. But, both parties asked declarations
of law to be given. It is true that defendants asked for a decree
in partition and did so in the same count in which they asked judg-
ment for possession.

"In Grimes v. Miller, 221 Mo. 636, it was held that a plaintiff
may in one count bring suit in ejectment, and in another count in
the same petition ask for partition of the land. The plaintiffs raised
no objection to their joinder in the same count. But the prayer
for a decree of partition was an incident, and wholly dependent
upon the finding and judgment under the issues of title, and right
to possession. Those were the issues tried, and as the parties made
those issues the suit was one at law. [Lee v. Conran, 213 Mo. 404;
Minor v. Burton, 228 Mo. 558.] Under that view the finding of
the court is not to be disturbed unless there is an absence of sub-
stantial evidence to sustain such finding, or, unless error was com-
mitted in the admission or rejection of evidence, or in the giving
or refusal of declarations of law.

"III. There is no conflict in the evidence that Thomas Connelly
died in November, 1880, nor that he, with his wife, was occupying

the property as his homestead at the time of his death. Under the
law then in force his widow became vested with an es-
tate for life in the property so occupied. [Ailey v.
Burnett, 134 Mo. 313; West v. McMullen, 112 Mo. 405;
Bushnell v. Loomis, 234 Mo. 371.] Mary Connelly, the life tenant,
was sole party defendant in the judgment for taxes rendered in
1897. The sale, and sheriff's deed executed thereunder, conveyed
to the purchaser no more than the title and interest of Mary Con-
nelly. [Milner v. Shipley, 94 Mo. 106; Graves v. Ewart, 99 Mo. 1;
Moore v. Woodruff, 146 Mo. 597; Bradley v. Goff, 243 Mo. 95;
Wilcox v. Phillips, 260 Mo. 664; Taff v. Tallman, 277 Mo. 157.]
The interests of the remaindermen were not affected by the judgment
and sale for taxes. The evidence shows that Bridget Conway claimed
the whole title by virtue of her deed from Wilhelm, the purchaser
at the sale for the taxes, claiming that the tax title was a perfect
title. The plaintiffs, on their examination said they claimed title
under the deed from Mrs. Conway, that she secured at the tax sale.
The evidence for plaintiffs tended to show acts of ownership of the
property from a period closely following the execution of the deed
by Wilhelm; and control and possession under claim of ownership
of Bridget Conway, and by plaintiffs. There was no evidence that
defendants or any of them had actual possessi n at any time, or
had paid taxes or set up any claim to the property prior to the time
of the institution of the suit. There is no contention made nor
evidence of adverse claim or possession until after the execution of
the deed by Wilhelm to Bridget Conway, in September, 1900. There
is abundant evidence that from about that time o Bridget Conway
and plaintiffs were exercising the usual acts of ownership, and were
claiming to be the owners.

"The widow's possession and occupancy of the homestead in its
inception is not adverse, but friendly to the heirs of the husband,
and is regarded as continuing so until disclaimed by hostile acts or
declarations. [Chouteau v. Riddle, 110 Mo. 366; Meddis v. Kenney,
176 Mo. 200.]

"In this case, the two estates, the life estate of Mary Connelly,
and the remainder in the heirs of Thomas Connelly, were created
by operation of law, seventeen years before the tax judgment was
rendered, and about twenty years before Bridget Conway obtained
the deed from Wilhelm. The duty to pay the taxes accruing was
upon the life tenant, and not upon the remaindermen. [Lewis v.
Barnes, 272 Mo. l. c. 406; Hall v. French, 165 Mo. l. c. 438.] The
heirs of Thomas Connelly were not entitled to the possession of the
property until the death of the widow, and until that time could
not have maintained an action for possession. Beyond any dispute
the two estates in this property had been created long before the

*(margin note at left:)* Adverse Possession.

adverse possession began. During that period the possession of the tenant was the possession of the remaindermen, so far as third persons were concerned. [Hall v. French, 165 Mo. 1. c. 438.]

"The adverse possession of plaintiffs could operate as against the life estate of the widow, but it did not operate against the re-maindermen so as to set the Statute of Limitations in motion against the remaindermen, until the expiration of the life estate by the death of Mary Connelly. [Hall v. French, 165 Mo. 430; Dyer v. Wittler, 89 Mo. 81; DeHatre v. Edmonds, 200 Mo. 246, 1. c. 280; Powell v. Bowen, 279 Mo. 280, 295; Graham v. Ketchum, 192 Mo. 15; Carr v. Barr, 294 Mo. 673; Case v. Sipes, 280 Mo. 110; Willis v. Robinson, 291 Mo. 650; Wells v. Egger, 259 S. W. 437.]

"'A stranger to the title may, of course, during the life of the life tenant, establish an adverse possession as against the life tenant and acquire title thereby to the life estate, but he cannot during the existence of the life estate establish an adverse possession as against the remaindermen or reversioners whose interests are vested, so as to bar their interest and the Statute of Limitations does not commence to run against the latter until the determination of the life estate.' [21 C. J. 975.]

"The defendants offered several declarations, all of which were refused. They disclose defendants' theory as to the rights of defend-

Declaration of Law. ants as remaindermen, but they are not declarations of law stated as arising upon facts submitted or to be found, but are statements of facts assumed as true, and conclusions based thereon. The declaration of law given for the plaintiffs authorizing a recovery, the only one disposing of the case, and the only one necessary to be noticed, is as follows:

"'The court declares the law to be that if it believes from the evidence that for a period of ten years or more before the commencement of this action plaintiffs and their grantors have been in the actual, open, notorious, continuous, hostile, exclusive and adverse possession of the real estate described in the cross-bill or any part thereof, claiming title thereto against all the world, then such possession vests title to such real estate in plaintiffs. If therefore, the court finds that plaintiffs and Bridget and James Conway, their grantors, have continuously for such period of time had the physical possession of said real estate, or any part thereof, either by themselves or their tenants, and exercised all the usual rights of ownership over the same and during such time claimed absolute title so openly and notoriously that their possession and claim of absolute title was known, or might be presumed to have been known, to defendants and those under whom they claim, then title to said real estate, or so much thereof as was so claimed and possessed, has vested in

plaintiffs, and the court should find in favor of plaintiffs to the extent such real estate was so possessed and claimed.'

"By adopting this declaration as the only law and theory upon which the rights of the parties were determinable, the court excluded all consideration of the evidence as to the existence of a life estate, and rights of defendants as remaindermen, the time of expiration of the life estate, and the time when a right of action could accrue to the defendants, and when the Statute of Limitations was set in motion against them. Hypothesizing ten years of adverse possession by plaintiffs, it was peremptory in character in requiring a finding for plaintiffs, entirely overlooking the questions whether or when a right of action for the possession of the property accrued to defendants. Since this declaration undertook to cover the case and was the only one given so doing, it must be assumed that the finding for plaintiffs was upon the theory stated therein.

"Counsel for plaintiffs urge in their briefs that title by adverse possession is an independent title and may be set up by anyone even against his own grantor and those under whom he derives some title and where there is a common source of title, citing Macklot v. Dubreuil, 9 Mo. 477; Wilcoxon v. Osborn, 77 Mo. l. c. 632; Perkins Land & Lumber Co. v. Irvin, 200 Mo. l. c. 490; Waddell v. Chapman, 238 S. W. l. c. 483. They further argue that since the defendants should be charged with knowledge of the improvements made on the property, and could have brought the action to determine title under Section 1970, Revised Statutes 1919, and failed to do so, they are barred. Upon the latter proposition we are cited to Saucier v. Kremer, 249 S. W. 640, and Shaffer v. Detie, 191 Mo. l. c. 393. We have examined the cases cited. We are unable to see their applicability to the facts in the instant case.

"The judgment should be reversed, and the cause remanded."

IV. On rehearing, respondents urge with much seriousness that the declaration of law (above quoted) given for, and at the request of, respondents, and which authorizes a finding and **Inclusion of** judgment for respondents, does not attempt to submit **Defenses.** the whole case, but correctly presents plaintiffs' (respondents') theory of the law of the case, and any omission therefrom of appellants' theory of the law of the case is mere nondirection rather than misdirection, in the absence of any requested declaration of law by defendants (appellants) embodying their theory of the law of the case. Hence, it is argued that the trial court committed no error in the giving of plaintiffs' declaration of law and the judgment *nisi* must be affirmed. In support of this contention, respondents cite DeFord v. Johnson, 177 S. W. 577; Morgan v. Mulhall, 214 Mo. 451; Williamson v. Transit Co., 202 Mo. 345;

Drey v. Doyle, 99 Mo. 459; Powell v. Railroad Co., 255 Mo. 420; Sang v. St. Louis, 262 Mo. 454; State ex rel. United Railways Co. v. Reynolds, 257 Mo. 19; and Wingfield v. Railroad Co., 257 Mo. 347. A careful reading and study of those cases, however, discloses that, in each and every instance, the cause was tried to a jury upon instructions given by the court for their guidance in reaching a verdict. Jurors are not supposed to be learned in the law and instructions are given, either at the request of the parties to the cause or by the court of its own motion, to acquaint them with the law of the case as applicable to the evidence. Consequently, in actions tried before a jury (supposedly unlearned in the law), we have substantially held, in the cases cited by respondents (following the rule stated in 2 Thompson on Trials, sec. 2341), that "mere non-direction, partial or total, is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused." In other words, a party, having asked no instructions presenting to the jury his theory of the law of the case, cannot convict the trial court of error and demand a reversal because the instructions given for his adversary do not go as far in his favor as they might have gone, for, if he desired to present his theory of the law of the case to the jury, then he should have requested an instruction thereon.

It is true that, in law actions (as distinguishable from purely equity actions) tried by the court without the aid of a jury, the court should, when requested, either give or refuse instructions (commonly called declarations of law) or state in writing the conclusions of facts found separately from the conclusions of law, but should not pursue both courses. [Kostuba v. Miller, 137 Mo. 161; Suddarth v. Robertson, 118 Mo. 286.] If, in such case, neither course is pursued by the trial court (because of absence of a request therefor) and there is substantial evidence to support the general finding and judgment of the trial court, the judgment will not be reversed on appeal. [Hill v. Kingsland, 131 Mo. 648, and cases there cited.] However, the court is presumed to know the law, being charged with its due and proper administration. Unlike law actions tried before a jury of laymen presumably unlearned in the law, in law actions where a trial by jury is waived and the court sits as the trier of the facts, the court presumably requires no direction respecting the law of the case. Hence, in the latter class of actions, wherein a jury is dispensed with and trial is had before the court, declarations of law serve a different purpose than do instructions to the jury. Therefore, it has been held that the purpose of declarations of law, in law actions tried by the court without a jury, is to advise the appellate court of the theory of law upon which the court *nisi* tried and ruled the action. [Baumhoff v. Railroad Co., 171 Mo. 120;

Dollarhide v. Mabary, 125 Mo. 197.] Consequently, it matters little whether the declarations of law given by the court amount to non-direction or mis-direction, for in either case the appellate court looks to the declarations of law, given and refused, only to ascertain the theory of the trial court respecting the law of the case.

Looking to the declaration of law given at request of respondents, hereinabove quoted, we find that it is predicated upon ten years *physical* possession of the real property involved by respondents and their grantors, Bridget and James Conway, and excludes all consideration of the facts in evidence as to the existence of the life estate and possession of Mary Connelly, the rights of appellants as remaindermen, the time of the expiration of Mary Connelly's life estate, the time when the right of action for possession of the prem- ises accrued to appellants, and the time when the Statute of Limitations commenced to run against appellants' right of action. The question of respondents' adverse possession of the real property in issue is one of mixed law and fact, dependent upon the above-mentioned elements, which were omitted from the declaration of law and upon which it should have been hypothesized. As said by this court in Dollarhide v. Mabary, 125 Mo. l. c. 202: "Where the court sitting as a jury tries questions of mixed fact and law, like the question of adverse possession, it should give instructions applicable to the case made by the evidence, defining adverse possession." It is apparent to us, from an analysis of the declaration of law referred to, that the trial court proceeded upon a wrong theory respecting the law of adverse possession as applicable to the evidence. Hence, as we have ruled, the giving of plaintiffs' declaration was error.

We might make the further observation, in passing, that we have again examined certain of appellants' refused declarations of law and, while they might well have been refused if offered as instructions to a jury, they at least disclose appellants' theory of law respecting their rights as remaindermen. The office of declarations of law being to inform the appellate court as to the theory of law upon which the case was tried and ruled by the trial court, the same nicety in declarations of law is not required as in instructions to a jury. [Zahm v. Royal Fraternal Union, 154 Mo. App. 70; Hellmuth v. Benoist, 144 Mo. App. 695.] If the declarations of law, as applied to the evidence, show a correct theory, then it is immaterial whether they are, in some respects, technically incorrect. [Citizens' Bank v. Cowart, 255 S. W. (Mo. App.) 931.] The refusal by the court of certain of appellants' declarations of law, while perhaps technically proper, rather tends to strengthen our conclusion that the trial court proceeded to judgment upon a wrong theory of the law of adverse possession as applicable to the evidence. However, without regard to appellants' refused declarations of law, we are

convinced that the trial court erred in giving respondents' declaration, which error requires a reversal of the judgment.

V. Since the submission of this cause on rehearing, the point is raised by respondents in their supplemental brief that the tract of land in controversy contains an area of more than eighteen square rods, the amount allowed by the homestead statute in force and effect at the death of Thomas Connelly. A computation of the area of the disputed land, assuming the correctness and accuracy of the survey and plat thereof in evidence, discloses that the area thereof is approximately twenty-four square rods. Therefore, the excess in amount over and above the homestead allowed by the statute is approximately six square rods. The homestead statute, at the time of Thomas Connelly's death (Sec. 2689,. R. S. 1879), defines the homestead thus: "The homestead of every housekeeper or head of a family, consisting (consists) of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the amount and value herein limited . . . ; and in cities having a population of forty thousand or more, such homestead shall not include more than eighteen square rods of ground, or exceed the total value of three thousand dollars.''

**Dower: Assignment: Limitations.**

The old dwelling house, occupied by Thomas Connelly during his life and thereafter by his widow, Mary Connelly, is located in the west end of the tract, while the new house, built by the respondents Falvey, is located in the east end of the tract. According to the survey or plat in evidence, the greater part of the new house built and occupied by the Falveys about 1902 lies outside and east of the westerly eighteen square rods, and within the excess of six square rods, more or less. Hence, it is urged by respondents that Mary Connelly, the widow and life tenant, never having had any right to the occupancy and possession of the excess in the east end of the tract, it being outside of her statutory homestead, respondents' possession thereof was adverse to the appellant remaindermen as soon as respondents went into possession in 1902, and therefore appellants' right of action accrued at that time without their having to await the death of Mary Connelly. Respondents furthermore contend that, having indisputable title by adverse possession to the excess, which is approximately the east 24⅓ feet of the tract, they also have title by adverse possession to the east thirty feet of the tract, conveyed to them by deeds of Bridget Conway in 1902 and 1903, inasmuch as those deeds (under which they claim title) gave them color of title to the whole of the east thirty feet of the tract.

In White v. Spencer, 217 Mo. 242, this court, en Banc, held, in substance, that where there is an existent judgment and the judgment debtor owns a tract of land in excess of the homestead proper, either

in quantity or value, and theretofore held as a part of the homestead tract, but the excess is not burdened with the dwelling house, the lien of the existent judgment attaches to such excess before the issuance and levy of execution or the admeasurement of homestead; and, if the excess is conveyed by the judgment debtor, the grantee takes it burdened with the judgment lien. In that case, GRAVES, J., speaking for this court, said, at page 258: "The Homestead Act says, however, that no levy can be made upon the homestead. The word 'homestead' as here used means a tract of land falling within the statutory limitations as to quantity, and we might add, value, although not herein involved. We have properly construed the Homestead Act to mean that no lien attaches to a homestead proper, that is, to the tract owned, occupied and claimed as a homestead, when it falls within the statutory limitations as to quantity and value. But, in our judgment, it will not do to say that if the judgment debtor owns one thousand acres of land, no lien is created by the rendition of the judgment as to all the excess over and above the hundred and sixty which might be selected for the homestead. To so construe the statute is to give no lien from judgments secured until levy is made and the homestead selected, appraised and admeasured, and would be but to encourage fraudulent conveyances between the time of the judgment and the actual setting aside of the homestead. . . . Pending this [judgment] lien, one who buys by private sale from the owner the homestead tract, greater in either value or quantity than the limits fixed by the statute, takes the surplus subject to the lien."

In the later case of Growney v. O'Donnell, 272 Mo. 167, this court, en Banc, ruled that, where a husband, without joinder of the wife in the deed, conveyed a tract of land of which the unassigned statutory homestead was a part, and greater in quantity than the statutory homestead, the conveyance is valid as to the excess of land over and above the homestead proper as defined by the statute, subject, of course, to the wife's dower in the excess.

In view of our holdings in the two last-cited cases, it would seem logically to follow that, in the instant case, Mary Connelly had o homestead proper in the excess of approximately six square rods, and that, therefore, the fee-simple title to the excess vested in the appellant heirs of the husband, Thomas Connelly, immediately upon his death, subject to the widow's dower therein.

It is insisted, however, by appellants that Mary Connelly, the widow, was the tenant and occupant in possession of all the land and not of a part only, for not only was she entitled to possession and occupancy of the homestead proper for life, but (it is asserted), under Section 2186, Revised Statutes 1879, she was endowed of dower in all the lands of her husband, and, under Section 2205,

Revised Statutes 1879, "until dower be assigned, the widow may remain in and enjoy the mansion house of her husband, and the messuages or plantation thereto belonging, without being liable to pay rent for the same." Hence, appellants argue that, dower in the excess not having been assigned to Mary Connelly, she occupied and possessed the whole of the premises until her death on August 22, 1912, and therefore appellants were not entitled to possession of any part of the land until the death of Mary Connelly, which occurred within ten years before the commencement of this action.

Counsel for respective parties to this action have not aided us in our labor by the citation of authorities in support of their respective contentions, being apparently content to blandly and baldly state their respective contentions and let them go at that. Consequently, we have found it necessary, at the expense of considerable time and much labor on our part, to run down the case law and statutes applicable to and bearing on the troublous and vexing questions so blandly stated with apparent confidence by respective counsel.

Under the statute (Sec. 2205, R. S. 1879) in force and effect at the death of Thomas Connelly, his widow, Mary Connelly, had the unquestionable right, until her dower was assigned, to occupy and enjoy the mansion house of her husband and the messuages or lands thereto belonging, which included, in the instant case, the excess or surplus of the lands of the deceased husband over and above the statutory homestead. [Holmes v. Kring, 93 Mo. 452; Gentry v. Gentry, 122 Mo. 202; Melton v. Fitch, 125 Mo. 281; Carey v. West. 139 Mo. 146.] Such right of the widow is commonly referred to, in this State as her right of quarantine, and is separate and distinct from the widow's right to the statutory homestead, and, being an incident of dower, it is entirely unaffected by the intervention of the homestead estate. [Chrisman v. Linderman, 202 Mo. 605; Smith Bros. Land & Inv. Co. v. Phillips, 289 Mo. 579.] In several early cases, the widow's quarantine, under the statute, was allowed to run for many years because her dower had not been assigned. [See, for example: Brown v. Moore, 74 Mo. 633; Holmes v. Kring, 93 Mo. 452; Westmeyer v. Gallenkamp, 154 Mo. 28; Graham v. Stafford, 171 Mo. 692; and Keeney v. McVoy, 206 Mo. 42.] It is also held, in a number of cases, that the possession of a doweress, by virtue of her right of quarantine, and the possession of those claiming under her, is not adverse to the heirs of the deceased husband so long as dower is unassigned, and that the heirs of the deceased husband have no legal or enforcible right to possession of the premises until dower has been assigned, or, if dower is never assigned, until the death of the widow. [Brown v. Moore, 74 Mo. 633; Robinson v. Ware, 94 Mo. 678; Holmes v. Kring, 93 Mo. 452; Sherwood v. Baker,

105 Mo. 472; Melton v. Fitch, 125 Mo. 281; Carey v. West, 139 Mo. 146; and Westmeyer v. Gallenkamp, 154 Mo. 28.]

It remains, therefore, for us to determine whether the widow's possessory right of quarantine herein, which accrued upon her husband's death in 1880 as an incident to her right of dower, was for an indefinite tenure, terminable only upon the assignment of dower, or, in the event of no assignment of dower, as here, then upon her death (as held in the early cases above cited), or whether her right of quarantine was affected and limited in tenure by subsequent legislative enactment.

Quarantine.

In 1887, there was enacted an act limiting the time for the institution of suits for dower in real estate. That act (Laws 1887, p. 177) provided: "All actions for the recovery of dower in real estate, which shall not be commenced within ten years from and after this act takes effect, or within ten years after the death of the husband, through or under whom such dower is claimed or demanded, shall be forever barred: provided, however, that if any person entitled to bring an action for the recovery of dower at the time this act takes effect be under legal disability to bring such action, such person may bring such action after the time herein limited and within three years after such disability is removed: provided, further, that the limitation in this act specified shall not be deemed to apply in any case where the widow is in possession of, and enjoying the mansion house of her husband as specified in Section 2205, Revised Statutes of the State of Missouri of 1879, until she shall have been evicted therefrom."

The foregoing act was amended at the revising session of the General Assembly of 1889 by eliminating the saving clause and the two provisos therein, leaving the amended statute in the following form: "All actions for the recovery of dower in real estate, which shall not be commenced within ten years from the death of the husband, through or under whom such dower is claimed or demanded, shall be forever barred." [Sec. 4558, R. S. 1889.] It has been brought down in its amended form, by subsequent revisions of the statutes, until its repeal and the enactment of a new section in lieu thereof in 1921. [Laws 1921, p. 119.]

The effect of the special statute of limitation of 1887 was discussed by this court in Belfast Investment Co. v. Curry, 264 Mo. 483, 498, wherein we said: "We are not unmindful of the fact that the conclusion we have reached is out of harmony with those prior decisions of this court which held that limitations would not run against dower prior to the assignment thereof. [John v. Fenton, 88 Mo. 64; Holmes v. Kring, 93 Mo. 452.] However, the provisions of the special statute of limitation relating to dower enacted in 1887 (if then in force) was not considered by the court when the case

last cited was decided. The right to dower does not attach to any particular part of a tract of land until it is assigned. It is in a sense an encumbrance upon all the land to which the husband died seized. The Legislature may have deemed it for the public good that land should not be rendered unsalable by such an outstanding claim for an indefinite time, and therefore wished to compel parties having such undivided possessory rights to assert them within ten years.''

In McFarland v. McFarland, 278 Mo. 1, 12, we said, in speaking of the purpose and effect of the special statute of limitation: ''It exhibits the intention to limit the quarantine of the widow to ten years and such further time as is necessary to perfect the judicial assignment of her dower, and also to put an end to the uncertainty which hangs over every title in which a deed appears which does not contain a release of dower. The statute should, no doubt, be reasonably construed for the correction of the evil at which it was evidently aimed, and this construction, including not only its purpose for the future but all the conditions which it superseded, as well as the words in which it is now expressed, manifests the intention of the Legislature.''

In Edmonds v. Scharff, 213 S. W. 823, 827, the same statute was again under review and we there said: ''The plaintiff asserts that the Statute of Limitations did not run on account of the occupation of the mansion house by the widow after the death of her husband. . . . However, under the recent rulings of this court, and the plain terms of the statute, the right of action to have dower assigned is barred. [Quoting the section of the statute, Sec. 391, R. S. 1909; Sec. 4558, R. S. 1889.] As the act containing this section was originally passed in 1887, a proviso was appended to the effect that the act should not apply to persons suffering certain disabilities, nor to any case where the widow is in possession of and enjoying the mansion house. The act was amended in the Revision of 1899 so as to omit the proviso, and leave the section to read as above. This court in two recent cases has commented upon the legislative intention manifested in that revision and has announced that there is no doubt the section as it now reads bars an action for dower in every case, without an exception. [Citing and quoting Belfast Investment Co. v. Curry, and McFarland v. McFarland, supra.] . . . These cases settle this contention against the claim of the plaintiff.''

In Smith Bros. Land & Investment Co. v. Phillips, 289 Mo. 579, 594, we said: ''In this State the right of quarantine depends upon the provisions of Section 4533, Revised Statutes 1889, which provides that ''until dower be assigned, the widow may remain in and enjoy the mansion house of her husband, and the messuages or plantation thereto belonging, without being liable to pay any rent for the same.' This is an incident to the right to have dower assigned, and,

when that right ceases, the right to quarantine also disappears. Were it otherwise the failure of the doweress to institute a proceeding for the recovery of her dower within the time limited would have the effect to give her the right of possession of the mansion house and messuages or plantation thereto belonging in perpetuity.''

Under the rulings laid down by this court in the fore-cited cases, as we construe their force and effect, Mary Connelly, the widow of Thomas Connelly, who was seized of an indefeasible estate for life (by virtue of Sec. 2693, R. S. 1879) in the statutory homestead of her deceased husband, must have demanded an assignment or admeasurement of her dower within ten years from her husband's death, failing in which her dower was barred; and, furthermore, her right of quarantine (by virtue of Sec. 2205, R. S. 1879), being an incident of dower, disappeared and ceased with her right of dower.

So far as the record before us shows, Mary Connelly never sought or demanded an admeasurement, or setting out, of either her homestead or dower in the tract of land in controversy. The Homestead Statute (Sec. 2693, R. S. 1879) in force at the death of Thomas Connelly, authorized the probate court having jurisdiction of the estate of the deceased housekeeper or head of a family, when necessary, to appoint three commissioners to set out such homestead to the person entitled thereto, and Section 2694, Revised Statutes 1879, provided: ''The commissioners appointed to set out such homestead, shall, in cases where the right of dower also exists, also set out such dower, and they shall first set out such homestead, and from the residue of the real estate of the deceased, shall set out such dower, but the amount of such dower shall be diminished by the amount of the interest of the widow in such homestead; and if the interest of the widow in such homestead shall equal or exceed one-third interest for and during her natural life, in and to all the real estate of which such housekeeper or head of a family shall have died seized, no dower shall be assigned to such widow.'' The section of the Homestead Statute of 1879 last referred to and quoted has been brought down by subsequent revisions of the statutes in the identical language. [Sec. 5859, R. S. 1919.]

The foregoing statute was construed in Jordan v. Rudluff, 264 Mo. 129, 135, wherein we said: ''Under its provisions, had the householder died seized of country lands in fee, leaving a widow without children, the homestead to the value of $1500 would be set out to her absolutely. If the value of the remaining lands added to this did not exceed $4500, no dower would be assigned. If the total value exceeded that sum, lands to the value of one-third the excess would be set out to her for life. This closes the transaction; for her homestead being a broader estate, and including her dower both

in quantity and estate, would amount of itself to an assignment of dower to that extent.''

In the instant case, the land of which Thomas Connelly died seized was located in a city having a population of more than forty thousand, so that he was entitled to a homestead therein of not more than eighteen square rods, or a total value not exceeding three thousand dollars. The tract of land in controversy seemingly contains approximately twenty-four square rods, and it was stipulated at the trial that the premises, at the death of Thomas Connelly in 1880, were of the value of about $500. Consequently, if the homestead proper, including the dwelling house, had been dmeasured ᴕnd set out to Mary Connelly, the widow, under the foregoing statute, no dower was assignable to her in the excess of approximately six square rods, for it is self-evident that the indefeasible life interest of the widow in the homestead proper exceeded one-third interest for and during her natural life in all the real estate of which her husband died seized, both as to quantity and value.

Thomas Connelly having died in 1880, we are confronted with the determination of the effect of the special statute of limitations of 1887 and its amendment by the statutory revision of 1889 (Sec. 4558, R. S. 1889) upon the quarantine right of his widow, Mary Connelly, to remain in and enjoy the mansion house of her husband and the messuages thereto belonging (including the excess or surplus of land over and above the homestead proper) until her dower (if any) be assigned in the whole premises. Under the decisions before the enactment of the special limitation-statute of 1887, it would seem that the widow's right of quarantine existed for an indefinite tenure terminable only upon the assignment of dower, or, if dower was never assigned, then upon her death. The special limitation-statute of 1887 contained a saving clause by which all actions for the recovery of dower might be commenced within ten years from and after said act took effect, regardless of whether the death of the husband occurred ten years before the passage of the act, and also contained a proviso that ''the limitation in this act specified shall not be deemed to apply in any case where the widow is in possession of and enjoying the mansion house of her husband as specified in Section 2205, Revised Statutes of the State of Missouri of 1879, until she shall have been evicted therefrom.'' It is undisputed upon the record in the instant case that Mary Connelly was in possession of and enjoying the mansion house of her deceased husband at the time of the taking effect of the statute of 1887, and that she was never evicted therefrom. By the revision statute of 1889 (Sec. 4558, R. S. 1889), the saving clause and proviso of the Act of 1887 were eliminated, and it is provided that ''all actions for the recovery of dower in real estate, which shall not be commenced

within ten years from the death of the husband . . . shall be forever barred.'' The question with which we are now confronted is whether the revision statute of 1889 took away from the widow, Mary Connelly, a vested right under the Act of 1887 to enjoy her possessory quarantine right in the entire premises until dower was assigned, or until her death. Under the decisions since the revision statute of 1889 above cited, the widow's quarantine right is held to be extinguished with her right of dower, unless an action to recover dower is commenced within the limitation period of ten years prescribed by the statute.

In Cranor v. School District, 151 Mo. 119, 123, we held: ''At any time before the Statute of Limitations has become a bar to an action, the Legislature may shorten or cut down the length of time required by the statute to become a bar thereto, provided a reasonable length of time is given the party in whose favor the cause of action exists in which to bring his suit.'' It is apparent that the revision statute of 1889 did not operate as a bar to an action for recovery of dower by Mary Connelly, at the time it took effect, for her husband had then been dead about nine years and she still had about a year in which to commence her action before it became barred by the terms of that statute.

In Weber v. Manning, 4 Mo. 229, a statute declaring that all actions of debt founded on any writing shall be commenced and sued on within ten years next after the cause of action shall have accrued was construed to give a right of action within ten years after the passage of the act, although more than ten years had elapsed after the cause of action accrued before suit was brought. Similar in force and effect are Callaway County v. Nolley, 31 Mo. 393, and Seibert v. Copp, 62 Mo. 182.

The point seems to have been squarely ruled in Belfast Investment Co. v. Curry, 264 Mo. 483, 498, wherein we said: ''It seems to be contended by appellant that the dower Statute of Limitation cannot apply to the title which it purchased from Mrs. Barrell, because her husband was dead before the year 1887, when this law was enacted. We do not think this point presents any difficulty. The chief purpose of the statute was to compel widows to institute suits to have their dowers assigned within ten years. As the statute operated prospectively, it at least became the duty of the widow to bring her action within ten years after Mr. Kumpf entered into possession in 1891. We do not wish to be understood as holding that it was not the duty of the widow to bring her action within ten years after the date of her husband's death in 1885, for it is undoubtedly within the power of t` > General Assembly to shorten a statute of limitation, provided a reasonable time is left within which parties affected by its provisions may institute their actions. [Tice

v. Fleming, 173 Mo. 49; Winkleman v. Levee District, 171 Mo. App. 49, l. c. 58.]''

Whether Mary Connelly should have brought an action to recover dower (as she was required to do by the revision statute of 1889) within ten years from the death of her husband, or within ten years from the taking effect of the revision s 'ute, in any event, she did not bring such action within either period of time and her right of action for recovery of dower in the lands of her deceased husband was barred by the statute, and with the bar of an action for recovery of her dower went the extinguishment of her right of quarantine. It follows that Mary Connelly had no lawful right to the possession of the surplus or excess of approximately six square rods in the east end of the tract in controversy, as against the appellant heirs of her deceased husband, when respondents Falvey went into possession of said excess under their deed from Bridget Conway in 1902. The appellant heirs of Thomas Connelly could have taken possession of the excess of six square rods, or, in the event that Mary Connelly, or any one claiming under her, had refused to relinquish possession, the appellants could have maintained ejectment and evicted her, or any one claiming under her, at any time after her quarantine right in the excess was extinguished, which was prior to the time when respondents went into possession of the excess in 1902. Respondents' possession of the excess of approximately six square rods at the east end of the tract was adverse and hostile to appellants, and respondents Falvey having taken possession of the excess under color of their deed from Bridget Conway in 1902, and having held continuous possession thereof for more than ten years thereafter and before the commencement of the instant suit, appellants are barred from asserting any claim or title in the excess, which, according to the survey in evidence, is approximately the east 24 feet 4¾ inches of the tract in controversy. The respondents, however, have neither title by adverse possession nor lawful paper title to any part of the homestead proper, consisting of eighteen square rods in the west end of the tract, and the dwelling house thereon, as we have ruled, for the reason that appellants were not entitled to possession of the homestead proper until the death of the life tenant, Mary Connelly, in 1912, less than ten years before the commencement of this action.

The judgment *nisi* is therefore reversed and the cause is remanded for further proceedings in accordance with the views herein expressed. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, J.,* absent.