# PHILOMENA JORDAN v. JAMES W. RUDLUFF et al., Plaintiffs in Error.

### Division One, March 2, 1915.

**HOMESTEAD: Set Out by Commissioners: Greater Than Widow's Dower Interest: Remarriage of Widow: Dower not Extinguished.** The Homestead Act of 1866 (G. S. 1865, p. 449) provided that a widow should take the same estate in the homestead as that of which her husband died seized, and directed that the commissioners appointed to set out such homestead should also set out her dower, first setting off the homestead and then her dower, the latter to be diminished by the amount of the widow's interest in the homestead, and no dower to be assigned if her homestead interest should equal or exceed one-third of all the realty. The law of 1875 reduced her homestead interest to a life estate, and provided that after deducting from its value the value of the estates of minor children, the balance was to be charged against her dower, which was fixed at a one-third interest in all the deceased's lands. The Act of 1895 made the widow's homestead interest terminable upon her remarriage. *Held*, that a widow whose husband died in 1901, and whose homestead, exceeding her dower interest, was set out to her in partition, was entitled upon her remarriage to have her dower, of one-third in value of all the lands of which her first husband died seized, assigned and admeasured to her out of the homestead tract.

Error to the Perry Circuit Court.—*Hon. Charles A. Klein*, Judge.

AFFIRMED.

*T. B. Whitledge* for plaintiffs in error.

(1) The dower in this case was merged in the homestead by the action of the commissioners, who found that the homestead value exceeded the dower interest of the widow in all the lands owned by the deceased; hence when homestead was destroyed by her remarriage the dower was also destroyed and lost.

Chrisman v. Linderman, 202 Mo. 619; 20 Am. & Eng. Ency. Law (2 Ed.), 588. (2) It is not insisted that the Homestead Statute *ex vi termini* destroys the dower where the homestead exceeds or is greater than one-third of the real estate of which the husband died seized. But where as in this case in an action to assign dower and homestead, the homestead was found to exceed the dower, and by decree of court it was so adjudged, and no dower was or could be assigned, the acceptance of that decree, and voluntarily choosing the larger estate and occupancy of it, until remarriage, did merge the lesser estate—the dower—into the homestead and it was lost by remarriage.

*John V. Noell* for defendant in error.

Defendant in error lost her homestead by her remarriage after the death of her first husband, but did not lose her dower. R. S. 1909, sec. 6710; Chrisman v. Linderman, 202 Mo. 605; Gore v. Riley, 161 Mo. 238; Graves v. Cochran, 68 Mo. 74; Bryan v. Rhoades, 96 Mo. 485; Keeney v. McVoy, 206 Mo. 54.

BROWN, C.—This is a suit for the admeasurement and assignment of dower in 150 acres of land in Perry county, of which William Cambron died seized in October, 1901, intestate, leaving the plaintiff, his widow, and certain children and grandchildren, the interests of all of whom are now in the defendants, as his only heirs. The petition states these facts and that afterward on August 14, 1905, plaintiff was married to one Milster, who died in 1907, and that in 1909 she married Jordan, who still lives. It further states that in 1903 some of these heirs brought a suit in partition against her and the other heirs, in the circuit court for Perry county, in which 32.31 acres of the land, comprising the mansion house and messuages, were set off to her

*Marginal note: Homestead and Dower.*

as her homestead by the commissioners, who found and reported that her interest in the homestead equaled or exceeded a one-third interest for her life in and to all said lands, and that they did not for that reason assign any dower to her; and divided the remaining lands, after setting out the homestead, to the parties to the suit entitled thereto. The report was approved by the court and judgment entered thereon. It then sets out the interest of these defendants as the sole owners in fee of the homestead tract subject to plaintiff's dower, that her dower has not been assigned in any of said lands, and that on the first day of March, 1909, the defendants wrongfully entered upon the 32.31 acres comprised in the homestead tract, deforcing her of her dower in the entire tract. She lays her damages at $200, and the value of her dower at $25 a month, and prays for the admeasurement and assignment of dower in the entire tract out of the 32.31 acres. The petition is sufficient if the facts above stated are not inconsistent with her right to recover.

The defendants demurred generally. The demurrer was overruled by the court, and the defendants refusing to plead further, the cause was submitted on the pleadings and evidence taken, and the court found that the plaintiff became, at the death of the said William Cambron, entitled to both homestead and dower in the 150-acre tract; that her dower had not been assigned in the partition suit; ascertained and declared the interests of all the parties subject to her dower; that she was entitled to be endowed of the one-third part in value of all said land for and during the period of her natural life, to be admeasured and set out to her out of the 32.31 acres heretofore mentioned; that no dower had ever been assigned to her out of any of the lands of Cambron, her former husband; and that the defendants on March 1, 1909, wrongfully entered upon all the 32.31-acre homestead tract and have ever since held exclusive and wrongful possession thereof, deny-

ing her right to its possession and thereby deforcing her of her dower in the lands of which Cambron died seized. It assessed her damages at $163.80, the rental value of her dower estate at $100 per annum, and its monthly value at $8.33 1-3. It found also that at the time of Cambron's death his mansion house and principal messuage were situated on said 32.31-acre tract. It thereupon adjudged that dower be assigned and admeasured to her out of the 32.31-acre homestead tract equal in value to one-third in value of the 150 acres of which Cambron died seized, excluding valuable improvements made thereon since the setting out of the homestead in the partition case; that she recover said damages and monthly rentals, together with her costs, and appointed three commissioners to assign and admeasure the dower.

The commissioners at the April term, 1911, reported that they had assigned her 30.14 acres, which they fully described, out of the 32.31-acre tract, as her dower. This report was duly approved and confirmed by the court by its final judgment at the same term, and on July 3, 1911, this writ of error was issued and is properly returned here.

The learned counsel for the plaintiffs in error have placed us under obligation by stripping their case to the single naked point which they present for our consideration. They relieve us from going again upon the ground over which we traveled in Chrisman v. Linderman, 202 Mo. 619, and Keeney v. McVoy, 206 Mo. 42, by stating that they do not insist that the Homestead Statute *ex vi termini* destroys the dower where the widow's homestead interest is greater than one-third in value of the real estate of which the husband died seized; and concede that where dower and homestead have not been assigned by legal proceedings, occupancy and delay do not destroy or in any way affect her right to dower. They do insist, however, that where, as in this case, in an action for the partition

of the lands of the deceased husband, the homestead
was found to exceed the dower, and the court so ad-
judged, so that no dower could be assigned in such pro-
ceeding, the acceptance of that decree, and voluntarily
choosing "the larger estate," and the occupancy of it
until remarriage, did merge "the lesser estate," the
dower, into the homestead, so that it was lost by such
remarriage. This, as we shall see, necessarily involves
the question whether under our statute the element of
forfeiture by remarriage is to be taken into considera-
tion in fixing the value of her homestead in connection
with the assignment of dower. If it is to be considered,
so that other dower must be assigned to her in pay-
ment for the disability so imposed, it introduces an
element into the valuation of homesteads which is im-
practicable to the point of absurdity. It is true the
lady might pass in review before the commissioners to
give them an opportunity to judge how long the home-
stead estate would probably continue until she might
reasonably be expected to have an opportunity to re-
marry, but her own capricious disposition would be
more difficult to estimate, affected, as it would be, not
only by temperamental idiosyncrasies but by the im-
pression left by previous connubial experience. If her
prospect of widowhood is not to be so valued, we must,
in construing the Act of 1895, which limits the home-
stead right to the time of its continuance, interpret it,
if it is clearly susceptible of such interpretation, so as
to avoid the imputation that the Legislature intended
to penalize the offense of remarriage by loss of her
immemorial right to be endowed. The maxims, "in
doubt the response is in favor of dower" and "the
law favoreth life, liberty, dower" (Donaldson v. Don-
aldson, 249 Mo. 228), flow naturally from the regard
for widows "running like a thread of gold through
common and statutory law and evidenced again and
again by the decisions of this court." [Keeney v. Mc-
Voy, supra, 55; Chrisman v. Linderman, supra, and

cases cited.] There is another principle to be reckoned with in this interpretation. Although there is an anomaly in the common law which recognizes an interest of a husband in the widowhood of his wife, it stops so short at that point that it will not even recognize the common justice of permitting the wife the same interest in her husband, and nothing is better settled than that honest marriage is encouraged by the law to the extent of avoiding all provisions of contracts, conveyances and testamentary dispositions attempting to restrain it. So in interpreting the Homestead Acts we are forbidden the presumption that the Legislature intended to violate this healthy principle, and must look to its very words for the exhibition of such an intent. In considering whether the judgment of the Perry County Circuit Court limited the dower of plaintiff in her husband's property to the period of her widowhood, we have only to go to the statutes which authorized that judgment. The court in rendering it was simply executing the statutory mandate to segregate from the general mass of the Cambron lands the part to which the widow was by its terms entitled, and in so far as it sought to limit or extend the statutory title the judgment was void. [Gore v. Riley, 161 Mo. 238; Davison v. Davison, 207 Mo. 702, 708.] In construing these statutes their history gives us valuable aid.

Although an act exempting homesteads from sale under executions was passed and approved March 23, 1863, its provisions shed little or no light upon these questions. The homestead law upon which our present system was constructed, and from which it has developed to its present form, was enacted in 1866. [General Statutes 1865, chap. 111, p. 449.] It provided (sec. 5) that upon the death of the housekeeper or head of the family leaving a widow *or* any minor children his homestead should pass to and vest in such widow or children, or if there should be both, in such widow and children, who should take the same estate of which

the deceased died seized; and that the *interest* of the children should endure until they should attain their majority. The same section provided further that the probate court should, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled. The rule established in the next section for the guidance of these commissioners was applicable to all proceedings in which it became necessary to admeasure and assign homestead and dower to the widow. It is as follows: "Sec. 6. The commissioners appointed to set out such homestead shall, in cases in which a right of dower shall also exist, also set out such dower; and they shall first set out such homestead, and from the residue of the real estate of the deceased, shall set out such dower, but the amount of such dower shall be diminished by the amount of the interest of such widow in such homestead; and *if the interest of such widow in such homestead shall equal or exceed one-third of all the real estate of which such housekeeper or head of a family shall have died seized, no dower shall be assigned to such widow.*"

While with the clause in which it occurs standing alone there might be doubt as to whether the words "amount of such dower" as used in the foregoing section refers to the value of the land or of the dower estate, it is set completely at rest by the plain words of the following clause, which we have taken the liberty to italicise. Under its provisions had the householder died seized of country lands in fee, leaving a widow without children, the homestead to the value of $1500 would be set out to her absolutely. If the value of the remaining lands added to this did not exceed $4500, no dower would be assigned. If the total value exceeded that sum, lands to the value of one-third the excess would be set out to her for life. This closes the transaction; for her homestead being a broader estate, and including her dower both in quantity and estate, would amount of itself to an assignment of dower to

that extent. Should the decedent have left minor children the homestead would be set out the same in all respects to the value of $1500. To this the value of all the other lands would be added. The value of the interest of the children, considered as cotenants with the wife during minority, would then be deducted from the value of the homestead, and if the remainder should equal or exceed one-third of the total value, no dower would be assigned, for the widow's life estate in the homestead would include it, as in case where there are no children.

We have gone into these details to enable us to understand the change made by the Act of 1875. [Laws 1875, p. 60.] This limited the widow's estate in the homestead to the term of her life, leaving it the same in all other respects, and the interests of minor children untouched. The effect of this was to leave her estate in the homestead and dower lands the same— a simple life estate, so that her homestead estate could not yet fall from under her dower. Her homestead was still diminished by the estates of the minors, any one of which might, in the course of events, prove greater than her own. To meet these conditions another amendment provided a new rule of assignment. The estate in the homestead for the life of the widow was to be valued instead of the fee; and after deducting from this the value of the estates of the minor children the balance was to be charged against her dower, which was fixed at one-third interest *for her life* in all the lands of which the householder died seized. Thus the extent of her estate in homestead and dower was made equal, and possession under the former would still support the latter until the same event should put an end to both. The Act of 1895 (Laws 1895, p. 186, sec. 2) however, introduced a new element which has rendered this controversy possible. It reduced her homestead estate to a base or determinable one (if we may be permitted such an expression

about an estate less than a fee), subject to be determined while her dower interest was still alive, but the statute requiring it to be *first* assigned carried with it the primary right of possession, so that if the homestead exceeded in extent the amount of land to which she would be entitled as dower in the absence of a homestead right, nothing was left to be assigned as dower unless and until a subsequent marriage should devest her homestead estate with its right to the possession of the whole. As a party to the partition she was entitled to have her interest ascertained and declared by the court the same as would any other party to the proceeding having a contingent interest that might at some time develop into a possessory right. For this reason the Act of 1895 made no change in the method of ascertaining, admeasuring and assigning the homestead or the dower, but left it the same as it was under the Act of 1875, when in case the homestead exceeded in extent the extent of the dower to which the widow would be otherwise entitled, the assignment of the homestead forever closed the transaction. In the partition case the court declared by its judgment her interest as doweress, and the judgment in this case gives it effect. We see no error in the record and the judgment of the circuit court will be affirmed.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur.