PHILIP HUNOTT, CLARENCE V. HUNOTT, MILDRED BLEDSOE SHEETER and MARIE BLEDSOE WINGET, Appellants, v. C. A. CRITCHLOW and RUTH CRITCHLOW, His Wife; WILLIAM W. DEPRO and BEATRICE DOROTHY DEPRO, His Wife; THOMAS C. ROMINES and SYLVIA MAXINE ROMINES, His Wife; WILLIAM A. GEMEINHARDT and DELLA GEMEINHARDT, His Wife; and METROPOLITAN ST. LOUIS COMPANY, a Corporation, Respondents, v. JACKSON DAVIS and VIRGINIA B. DAVIS, His Wife, Third Party Defendants, No. 44437—285 S. W. (2d) 594.

Division Two, November 14, 1955.

Motion for Rehearing or to Transfer to Banc Overruled, January 9, 1956.

*Frederick E. Steck* and *Oliver & Oliver* for appellants.

602·

*Barton & Arnold* and *Oliver F. Erbs* for respondent Metropolitan St. Louis Company; *Blanton & Blanton* for respondents and third party plaintiffs; *Merrill Spitler* for third party defendants.

604

[595] BOHLING, C.—This suit was filed June 2, 1953, to determine title to adjoining Lots 1 and 4, Matthews Second Addition, Town of Matthews, New Madrid county, Missouri, against the claimants of separate portions (four) thereof and the holder of a deed of trust on one of said portions; and also four [596] counts in ejectment for possession. We refer to the parties as plaintiffs and defendants. The defendants pleaded affirmative defenses to plaintiffs' claim, and also counterclaimed to quiet title to the portions respectively held by each. They filed a third party claim against Jackson Davis and Virginia B. Davis, his wife, on warranties in deeds in their chain of title. The answer of the third party defendants adopted, by reference, the answer of the original defendants as well as their said counterclaim. The answer of the owner of the deed of trust presented like issues. Plaintiffs filed a reply. The plaintffs claim as heirs of a homesteader; as remaindermen without right of possession until the termination of a life estate in 1950. Briefly stated, defendants claim title under tax sales, followed by warranty deeds; adverse possession; and action to quiet title; and plead limitations, laches and estoppel, in defense, and if plaintiffs have title ask, in the alternative, that defendants be reimbursed for the taxes and the increased value of the land accruing from improvements made after the tax sales, and that the third-party defendants be held on the warranty in their several deeds. A change of venue was granted to Scott county. The trial court, after taking the submission under advisement, made a general finding in favor of all defendants and entered judgment accordingly, the effect of which was to adjudge and decree that the interested defendants were the owners in fee simple of their respective portions of said Lots 1 and 4; that plaintiffs had no interests therein; and that the deed of trust was a valid lien against the portion of said lots therein described. The plaintiffs appealed.

Louis Hunott, the common source of title, acquired title to Lots 1 and 4 under the name of "Louis Hunot" by warranty deed on October 29, 1910. He was twice married, having three children by his first wife and none by his second wife. His first wife died in 1912. Margaret Owings, the widow of John Owings, had two children, W. G. (Gobel) and Irene Owings. Mr. Hunott and Mrs. Owings were married in 1914 and resided on the lots, where he died intestate September 20, 1922.

Margaret Hunott, the widow, continued to live on Lots 1 and 4 after Mr. Hunott's death. There was testimony that about 1936 or 1937 she went to Tyler, Texas, to make her home with her daughter, Mrs. Irene Wood, where she died October 15, 1950; but defendant Critchlow testified she returned and lived on the property for a time after 1939.

Plaintiffs, with the date of their birth and relationship to Louis Hunott, are: Clarence V. Hunott, son, born January 17, 1900. Mildred Bledsoe Sheeter, granddaughter, born October 28, 1914, and Marie Bledsoe Winget, granddaughter, born March 16, 1913, daughters of Mrs. Clara Hunott Bledsoe, who died December 18, 1916. Philip Hunott, grandson, born April 30, 1921, the son of Louis Alfred Hunott, who died July 12, 1934. We understand Louis Alfred Hunott died intestate.

The two lots were sold for taxes under the Jones-Munger law (Laws 1933, p. 425). Lot 4 was sold for delinquent taxes for the years 1928 to 1933, inclusive, and a tax deed, dated December 3, 1938, and recorded December 7, 1938, conveyed the title to W. G. Owings, the son of Margaret Owings. Lot 1 was sold for delinquent taxes for the years 1932 to 1936, inclusive, and a tax deed, dated and recorded November 28, 1939, conveyed the title to Lot 1 to "Margaret Owings."

Upon the probating of Margaret Hunott's will it was disclosed that Margaret Owings was Margaret Hunott. The will was signed Margaret Hunott, but it was captioned: "Last Will and Testament of Margaret Hunott (also known as Margaret Owings)"; and recited: "I, Margaret Hunott, also known as Margaret Owings, * * do * *." There was testimony that after the death of Louis Hunott his widow sometimes used the name Margaret Owings.

By separate warranty deeds dated July 12, 1943, W. G. Owings conveyed Lot 4 and [597] Margaret Owings conveyed Lot 1 to Jackson Davis. Mr. Davis testified he knew Margaret Owings but did not know she was Louis Hunott's widow. The two deeds were recorded August 5, 1943. Mr. Davis paid $1,800 for the two lots.

Lots 1 and 4 extend in a generally east-west direction, Lot 1 being immediately north of Lot 4. Lot 1 is a quadrilateral, 231.6 feet north and south, with its north line fronting 396 feet on a street. Lot 4, in the form of a triangle, has its apex at the southeast corner of Lot 1 and an alley, extends westwardly 405 feet along the alley, and has

a base of 70 feet. The dividing line between the two lots is 407.2 feet in length. The title of defendants to different portions of said lots emanated from Jackson Davis and wife under warranty deeds. The property lines of the following defendants extend north and south from the street line on Lot 1 to the alley line on Lot 4. To defendants William. A. Gemeinhardt and wife, the east 80 feet of the two lots. To defendants Thomas C. Romines and wife, the 140 feet immediately west of said 80 feet. To defendants C. A. Critchlow and wife, the west 176 feet of the two lots. Defendants Critchlow, who own the land immediately west, deeded the west (approximately) 93 of said 176 feet by 147 feet deep to defendants William W. Depro and wife, the west line being slightly beyond the west line of Lot 1.

Defendant Metropolitan St. Louis Company, a corporation, made two loans to defendants Romines, secured by recorded deeds of trust on said defendants' portion of Lots 1 and 4, on the strength of the record title. The loans were made October 8, 1946. One deed of trust secured an indebtedness of $4,000, and the other secured an indebtedness of $1,000. At the time of trial, the $4,000 loan had been paid but the deed of trust had not been released of record; and there was a balance of $686.68, principal amount, unpaid on the $1,000 loan.

Jackson Davis, on September 24, 1945, filed an action in the Circuit Court of New Madrid county to quiet the title to said Lots 1 and 4 against Margaret Hunott, Louis Alfred Hunott, Clarence Virgil Hunott, Marie Bledsoe and Mildred Bledsoe, if living, and if dead, their consorts, heirs, devisees, alienees, or immediate, mesne, or remote, voluntary, or involuntary grantees. Notice of the commencement of the action was published in the Southeast Missouri News, of Lilbourn, Mo., a weekly newspaper of general circulation in the county. The affidavit for publication was executed by Ralph E. Bailey, attorney for said plaintiff, and stated "that service cannot be had on the defendants in the manner prescribed by Section 27, page 366 of the Laws of Missouri for 1943, because the plaintiff does not know whether the defendants are living or dead and does not know their last Post Office addresses." The judgment, entered December 17, 1945, adjudged the fee simple title to said lots in Jackson Davis, plaintiff. The instant plaintiffs, among other things, say the court never obtained jurisdiction over any of the defendants named in said suit, contending the attempted service by publication was void because the application failed to "show why service cannot be had in the manner prescribed in Section 27" as required by Laws 1943, p. 367, § 28(b), and that said judgment is open to collateral attack whenever and wherever it comes in the way; citing, among others, Hankins v. Smarr, 345 Mo. 973, 137 S. W. 2d 499, 501 [3]; Abernathy v. Missouri P. R. Co., 287 Mo. 30, 228 S. W. 486, 487 [2]; Orrick v. Orrick, Mo. App., 233 S. W. 2d 826, 829; Haake v. Union Bk. & Trs. Co., Mo. App., 54 S. W. 2d 459, 463 [12-15].

The evidence established that improvements by defendants or their predecessors in title had enhanced the value of the respective portions of Lots 1 and 4 as follows: Defendants Critchlow, who had rehabilitated the dwelling house, approximately $4,000. Defendants Romines, on whose portion a home and other improvements had been made, approximately $9,000. Defendants Depro, who constructed a home on their portion, $18,000 to $20,000. Defendants Gemeinhardt, $364. The taxes on their respective portions were paid. The record [598] establishes no increase in the value of Lots 1 and 4 since 1922 other than that resulting from the improvements placed thereon by the respective defendants or their grantors.

The testimony established that Philip Hunott talked to Mr. Critchlow and Mr. Gemeinhardt the latter part of 1952, perhaps November, stating he came to see about the chances of plaintiffs to secure a part of the property, and that each informed him they thought the matter had been settled in court. Mr. Critchlow is Mrs. Depro's father and the Depros built their home on his promise to give them the ground. They constructed their home between March and June, 1953, receiving their deed May 13, 1953, recorded May 18, 1953. It was within $500 of completion when summons was served on them June 2, 1953, which was the first they knew of the claim of plaintiffs. Mr. Critchlow testified he thought so little of Philip Hunott's seeing him that he did not mention the matter to the Depros until after suit had been filed.

Matthews had a population of 500 or less in 1922, and a homestead did not "include more than five acres of ground, or exceed the total value of fifteen hundred dollars." RSMo 1949, § 513.475; R. S. 1919, § 5853. (Statutory references are to RSMo 1949 and VAMS unless otherwise indicated.) Margaret Hunott, there being no minor children, succeeded to the homestead rights until her remarriage or death, and the remainder estate in the homestead vested in the heirs of Louis Hunott. Hall v. Hall, 346 Mo. 1217, 145 S. W. 2d 752, 754[2]; §§ 513.495, 468.010; R. S. 1919, §§ 5857, 303.

Said Lots 1 and 4 comprised about three acres of ground. With respect to the fair market value of said lots at the time of Louis Hunott's death, Clarence Hunott, plaintiff, valued the property at $1,000 to $1,200, and plaintiffs' witness George Steele valued it at $1,000 to $2,000. Mr. Steele did not know that a barn was on the lots and did not take it into consideration. For defendants there was testimony that Mr. Hunott kept his property in good condition; that a house in good condition and an "A No. 1" barn, 40 x 60 feet, were on said lots at his death. Defendant Critchlow, who knew the property, stated it was worth "at least $2,500" in 1922. Another witness for defendant estimated its value at $3,000 to $3,500 in 1922, and stated the barn had been taken down and erected on other property while the widow lived there. In 1943 Lots 1 and 4 sold for $1,800. The barn had been removed and there was testimony from plaintiffs as well as de-

fendants that the dwelling was in a very much run-down condition, and did not compare with its condition in 1922.

A finding that said lots had a value of $2,500 or more in 1922 was warranted. This exceeded the allowable value of a homestead.

■ There was no admeasurement of dower or homestead to Margaret Hunott, the widow, at any time; and defendants say that upon the expiration of ten years after her husband's death in 1922 her dower and quarantine rights became barred by limitations and her possession of Lots 1 and 4 became adverse. The authorities sustain defendants to the extent the value of Lots 1 and 4 exceeded in 1922 the homestead therein. See particularly Falvey v. Hicks, 315 Mo. 442, 286 S. W. 385, 391(V), holding a widow had no homestead proper in so much of her intestate husband's real property as exceeded the statutory homestead; that the fee to such excess real property vested in his heirs, subject to such dower and quarantine rights as existed in the widow, and that the widow could and had acquired title to such excess real property by adverse possession. The dwelling in the instant case was on Lot 1 and the barn on Lot 4. Plaintiffs say they accept this solution and confine their claim of homestead to Lot 1 only. We outline the reasoning:

A widow, until dower be assigned, may occupy the mansion house and the messuages or plantation thereto belonging. § 469.220; R. S. 1919, § 334. The statutes provide for the admeasurement of dower; and if an action therefor be not commenced within ten years from the death of the [599] husband, the widow's right of dower is barred. § 469.470; R. S. 1919, § 359. Commissioners appointed to set out a widow's dower give consideration to a widow's rights in the homestead, because "the amount of such dower shall be diminished by the amount of the interest of the widow in such homestead; and if the interest of the widow in such homestead shall equal or exceed one-third interest for and during her natural life, in and to all the real estate of which such housekeeper or head of a family shall have died seized, no dower shall be assigned to such widow." § 513.505; R. S. 1919, § 5859. Jordan v. Rudluff, 264 Mo. 129, 135, 174 S. W. 806, 808. The right of occupancy in the widow is commonly referred to as the widow's right of quarantine, is an incident of her right of dower, and when her right of dower expires, her right of quarantine is also lost. Moore v. Hoffman, 327 Mo. 852, 39 S. W. 2d 339, 343[9], 75 A. L. R. 135, following Falvey v. Hicks, supra.

The possession by the widow of so much of Lots 1 and 4 as represented a value in excess of the homestead therein was adverse to the heirs of the homesteader, the remaindermen, and ripened into a title by adverse possession prior to the institution of this action June 2, 1953. § § 516.010, 516.030; Falvey v. Hicks, supra. (Consult § 469.470 and Moore v. Hoffman, supra, 39 S. W. 2d l.c. 343 et seq., involving adverse possession by a doweress.) This title was as complete as one

acquired by deed. Scannell v. American Soda Fountain Co., 161 Mo. 606, 618, 61 S. W. 889, 891; Nelson v. Brodhack, 44 Mo. 596, 600.

The testimony established that the good condition of the improvements and not the land imparted the value to Lots 1 and 4 in 1922. Clarence Hunott testified that about 1922 he sold twelve lots, he did not recall their size, in Matthews for a total of $250. The remaindermen had their remedy to prevent the dismantling of the barn for erection elsewhere, extraordinary deterioration of the dwelling, and the widow's acquisition of an interest in the fee through adverse possession. Such items, insofar as they may have an effect on the value of the homestead, should not enlarge the original homestead interests.

The tax deeds of 1938 to Lot 4 and of 1939 to Lot 1 are in the chain of title of the defendants. We are now concerned with Lot 1; and the discussion is to be taken as bearing on Margaret Owings' tax deed, recorded November 28, 1939, and the title to Lot 1.

■ A homestead is not exempt from sale for taxes. Robinson v. Levy, 217 Mo. 498, 521, 117 S. W. 577, 584(6). Land is "chargeable with its own taxes, no matter who is the owner, nor in whose name it is or was assessed." § 137.170.

■ Granger v. Barber, 361 Mo. 716, 236 S. W. 2d 293, 296[4, 5]; a suit attacking a tax sale and deed under the Jones-Munger act (Laws 1933, p. 425), held that tax sales under the provisions of said act in effect at the time of the instant tax sale passed the title of the remaindermen, although they were not entitled to possession by reason of an outstanding life estate, pointing out that said act (p. 430, § 9952a) provided: "* and it shall not be necessary to include the name of the owner, mortgagee, occupant or any other person or corporation owning or claiming an interest in or to any of said lands or lots in the notice of such sale".

Section 9957 of said act (p. 438) provides that the tax deed "shall vest in the grantee an absolute estate in fee simple."

Keaton v. Jorndt, 259 Mo. 179, 196, 168 S. W. 734, 738[4], states: "While as between the life tenant and the remainderman, the former is bound to pay the annual taxes * *, yet with this obligation *inter sesse* the State has nothing to do. * * If the life tenant fails to fulfill this duty, and both the life tenant and the remainderman be properly sued and the land be sold, the State's lien is foreclosed upon the fee; for the lien of the State is upon the fee, and a fee passes by the sale and by the deed of the Sheriff, other things being equal."

■ [600] The plaintiffs, remaindermen, to avoid the effect of the legal fee simple absolute title of record passing under the tax and subsequent deeds to defendants say that as between life tenants and remaindermen the duty to pay the general taxes rests upon life tenants in possession (Falvey v. Hicks, 315 Mo. 442, 286 S. W. 385, 389[6]; Hall v. French, 165 Mo. 430, 438, 65 S. W. 769, 771), and seek to have the tax sale operate merely as a payment of the taxes, inuring to their

benefit and leaving the title exactly where it was before the tax sale and deed (McCune v. Goodwillie, 204 Mo. 306, 338 (VI), 102 S. W. 997, 1006 (6) ; Bullock v. Peoples Bank, 351 Mo. 587, 173 S. W. 2d 753, 759 ; Peterson v. Larson, 285 Mo. 119, 225 S. W. 704, 706[5] ; Mathews v. O'Donnell, 289 Mo. 235, 233 S. W. 451, 459[7, 8]) ; that "since Margaret Hunott owned only a life estate, that is all defendants and their predecessors in title purchased from her, and they were obligated to pay the taxes until the expiration of the life estate which they purchased" (Mathews v. O'Donnell, supra; Bone v. Tyrrell, 113 Mo. 175, 188 (VI), 20 S. W. 796, 799 (5) ; Bradley v. Goff, 243 Mo. 95, 102, 147 S. W. 1012, 1014[3, 4] ; Nichols v. Hobbs, Mo., 197 S. W. 258, 260), and that limitations did not begin to run against the remaindermen until her death, October 15, 1950 (Falvey v. Hicks, supra, 286 S. W. l.c. 389[8] ; Mathews v. O'Donnell, supra, 233 S. W. l.c. 460[12, 13] ; Johnson v. Adams, Mo., 7 S. W. 2d 1010, 1011[1] ; Powell v. Bowen, 279 Mo. 280, 214 S. W. 142, 143[1], 146).

In some of plaintiffs' cases the sale or proceedings did not affect the fee or remainder interest but only affected the interest of the life tenant. The Falvey (286 S. W. 387), Hall (165 Mo. 434, 65 S. W. 771), Bradley (147 S. W. 1014), Bone (113 Mo. 185, 20 S. W. 798) cases. In others the defendant was the life tenant or one standing in the shoes of the life tenant. The McCune (102 S. W. 1006(b) ), Bullock (173 S. W. 2d 759 et seq.), Peterson (225 S. W. 706 (2) ) cases. In others the defendant had actual or was charged with constructive notice of the life tenant's interests. The Hall (supra), Mathews (233 S. W. 459), Bone (113 Mo. 178, 179, 20 S. W. 796) cases. Nichols v. Hobbs, supra, involved a devise to a daughter-in-law "and to the heirs of her body," and said devisee's deed conveying "all her right title and interest" to defendants. The record of the will in the recorder's office omitted the words "and to the heirs of her body." It was held the life tenant's grantees were charged with notice of the probate files and records, which disclosed grantor's true title, and took only her interests. Johnson v. Adams, supra, involved a void administrator's sale and deed of the homestead to pay a decedent's debts and a purchase by his widow. Wicoff v. Moore, Mo., 257 S. W. 474, 475, involved a void tax judgment against a homestead and a void tax deed, and the tax sale purchaser was the second husband of the life tenant and the original defendant. Tax sales and deeds were also involved in the Falvey, McCune, Bullock, Peterson, Mathews, and Bradley cases. As mentioned hereinafter Powell v. Bowen, supra, considered the deed "void" as to the married woman's fee simple estate there involved.

 Defendants say it was not necessary for plaintiffs to wait until the widow's death to have their rights determined; citing § 527.150; Granger v. Barber, supra.

Section 527.150, the quiet title statute, provides, so far as material: "Any person claiming any title, estate or interest in real property.

whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not," to determine the title etc. of the parties, respectively, in such real estate. The quoted provisions first appeared in Laws 1897, p. 74, § 1, effective March 15, 1897.

Northcutt v. Eager (1896), 132 Mo. 265, 274(3), 33 S. W. 1125, 1127(3), held that under the prior law (R. S. 1889, § 2092) one **[601]** in possession claiming the fee could not compel a suit to try title by a remainderman out of possession who conceded a life estate to plaintiff.

An early case involving Laws 1897, p. 74, § 1, held remaindermen who were under no disability and who failed to sue to quiet title within ten years after their right to bring such suit accrued were not barred of their right to bring such suit or of their estate in remainder; explicitly stating the court reached a different conclusion to that in cited Iowa cases under a similar statute because: "The life estate is the support and foundation on which the remainder must stand." Armor v. Frey (1913), 253 Mo. 447, 474(VIII), 161 S. W. 829, 837 (VIII). In Powell v. Bowen (1919), 279 Mo. 280, 214 S. W. 142, 143[1], 146, court en banc by a five to two vote reached a like result in a quiet title action. That case involved a married woman's title to lands and a deed in 1882 by her and her husband at a time when the right of possession was in the husband and married women were under the disability of coverture. Her acknowledgment was defective and the majority opinion considered the deed "void" as to her interests. Such rulings are to the effect remaindermen may but are not required to sue to quiet title to avoid the statute of limitations on the theory they have no right of action against which limitations run until they have a possessory interest. The life tenant was not the tax sale purchaser in Granger v. Barber, supra.

■ Defendants contend plaintiffs' attack on the tax sales and deeds should have been instituted within three years after the recording of the tax deed in 1939 under § 140.590, which so provides "* * except in cases where the taxes have been paid or the land was not subject to taxation, or has been redeemed as provided by law * *." Granger v. Barber, supra, 236 S. W. 2d 296[5], held the three-year limitation of § 140.590 applicable in appropriate instances to remaindermen prior to their being entitled to possession of the land.

Plaintiffs, however, say the instant case comes within the exceptions mentioned in § 140.590, and that § 140.610 (Laws 1933, p. 442, § 9960b), specifying what one claiming by adverse title to a tax deed is required to prove to defeat the title conveyed by such deed (among other things, that the taxes had been timely paid or the land "had been redeemed pursuant to law"), does not prevent setting aside a tax deed on grounds other than those mentioned (Burris v. Bowers, 352 Mo.

1152, 181 S. W. 2d 520, 522[1]), contending, as stated, the instant tax sale constituted the payment of the taxes and left the title exactly where it was before said sale.

If the three-year limitation of § 140.590 does not apply, those claiming title adverse to such tax title do not necessarily have an unlimited time in which to sue to recover the land or defeat the tax deed. William H. Johnson T. & R. Co. v. Belt, 329 Mo. 515, 46 S. W. 2d 153, 156[10]. Tax title cases have been decided on the theory the ten-year limitation generally applies in instances wherein the special three-year limitation does not apply. Gulley v. Waggoner, 255 Mo. 613, 625, 164 S. W. 557, 560. See Rutter v. Carothers, 223 Mo. 631, 641(III), 122 S. W. 1056, 1059(3).

■■■■ Plaintiffs state they cannot be divested of their legal title by the equitable doctrine of laches in an action at law in which no affirmative equitable relief is asked, citing Bell v. George, 275 Mo. 17, 204 S. W. 516, 519[2] (an action in which neither party asked equitable relief), and Powell v. Bowen, supra, 214 S. W. l.c. 145, 146. In Powell v. Bowen and Johnson v. Adams, as stated supra, as well as Bell v. George and Lewis v. Barnes, 272 Mo. 377, 199 S. W. 212, 217[4], the proceedings or conveyances involved did not affect or were void as to the legal titles sought to be affected. In the instant case plaintiffs seek to defeat the absolute estate in fee simple passing under the tax and subsequent deeds to the several defendants; and defendants interposed estoppel and laches in defense.

In Cockrill v. Hutchinson, 135 Mo. 67, 75, 36 S. W. 375, 377, 58 Am.St. R. 564, a wife, her husband joining, mortgaged [602] lands of the wife to secure $450. The wife died in 1877, leaving her husband as tenant by the curtesy and two daughters surviving, her only heirs. One daughter died intestate, leaving the other as her only heir. The husband purchased the land for $300 at a sale under the mortgage June 13, 1878. He conveyed to one Hazen, who conveyed to defendant Hutchinson in 1887. Hutchinson had no knowledge of any claim of the daughters and placed valuable improvements on the land. The father died in 1888. On December 31, 1892, the surviving daughter sued to redeem the land from the sale under the mortgage on the ground the life tenant's purchase was for the benefit of himself and the remaindermen. The court considered the life tenant acquired the legal title for the benefit of himself and the remaindermen if the latter paid their share of the purchase money within a reasonable time, but since the plaintiff had waited about fourteen years after the life tenant's purchase and the land had been greatly increased in value by improvements made by defendant in good faith, it would be inequitable to permit the remaindermen to wrest the property from defendant. Defendants also cite, among others, Morrison v. Roehl, 215 Mo. 545, 556(IV), 114 S. W. 981, 984(4); Willoughby v. Brandes, 317 Mo. 544, 297 S. W. 54, 58[11]; Wichter v. Hanley, 299 Mo. 696,

253 S. W. 1002, 1003[5, 6]. In the Cockrill and Morrison cases the encumbrances were in existence at the time of the creation of the life estate and remainder interest, and the life tenant was not obligated to discharge the encumbrances, whereas in the instant case the payment of taxes was primarily the obligation of the life tenant. However, under Granger v. Barber, as stated supra, the instant tax sale and deed passed the remainder interest, as well as the life estate, and were not void.

In some circumstances remaindermen may lose their rights where an outstanding superior title acquired by a life tenant passes to a purchaser in good faith for full value who makes valuable and lasting improvements on the land. More than rights of the life tenant and the remaindermen inter sesse are here involved.

So far as material here all litigants are sui juris. Margaret Hunott openly exercised acts of ownership over Lots 1 and 4. She went into possession of the whole. She, as widow, was entitled to possession for life of only that portion of the lots which did not exceed a value of $1,500. She acquired title to that portion of said lots having a value in excess of $1,500 by adverse possession. She permitted the dwelling to come into a state of disrepair. She permitted an "A No. 1" barn to be dismantled for erection elsewhere. Permanent improvements were made on the lots. The record permits of a finding that the remaindermen had or were charged with knowledge of these facts. They, so far as disclosed of record, treated the occupants following Mr. Hunott's death September 22, 1922, as the owners of said lots until November, 1952, when Philip Hunott talked to Mr. Critchlow and Mr. Gemeinhardt. Up to that time the heirs of Louis Hunott took no interest in, exercised no control over, had nothing to do with, and never set up any claim to the property or any portion of it.

Nothing of record disclosed a homestead interest in said Lot 1 or Lot 4. No real estate was inventoried as an asset of the estate of Louis Hunott, deceased. Nor was real estate inventoried as an asset of the estates of Clara Marie Bledsoe (now plaintiff Mrs. Winget) and Mildred Geneva Bledsoe (now plaintiff Mrs. Sheeter), Minors. The legal title to an absolute estate in fee simple passed under the instant tax sale and deed. Granger v. Barber, Keaton v. Jorndt, and § 9957, supra. Two years passed after the tax sale of Lot 1 before the collector's tax deed was delivered to the purchaser. The plaintiffs made no attempt to redeem. Laws 1933, p. 437, § 9956a. Valuable and lasting improvements were made by defendants or their predecessors in title on their respective portions of said lots. There was nothing of record to apprise defendants that the tax and subsequent [603] deeds did not pass the title they purported to convey on their face. A finding that defendants were bona fide purchasers for full value without notice was within the record made. Hendricks v. Calloway, 211 Mo. 536, 559 (IV),

111 S. W. 60, 66(4) ; Marston v. Catterlin, 270 Mo. 5, 192 S. W. 413, 415[4, 5] ; Bradford v. Davis, Mo., 219 S. W. 617, 618.

The rule usually followed in suits to quiet title or to cancel tax deeds is that plaintiff must recover on the strength of his title and not on the weakness of his adversary's title. Gee v. Bullock, 349 Mo. 1154, 164 S. W. 2d 281, 284[9]. The court determines the better title as between the parties. Johnson v. McAboy, 350 Mo. 1086, 169 S. W. 2d 932, 934[4, 5]. A like rule exists in ejectment proceedings. Langford v. Welton, Mo., 48 S. W. 2d 860, 863[5].

As to one not charged with notice, "Margaret Owings" took and gave constructive notice that she was claiming the fee simple title to Lot 1 upon recording the collector's tax deed on November 28, 1939. This suit was not instituted until June 2, 1953, thirteen and a half years after the tax deed was recorded, and approximately nine years and ten months after the recording of the warranty deeds to Jackson Davis. The lien of the State for taxes was upon the fee, and the collector's tax deed passed the fee simple title, the remainder interests as well as the life tenant's interests. If in the circumstances of record the trial court considered that defendants had the better title and right to possession, we are not disposed to interfere under the record and presentation made.

The judgment is affirmed. *Barrett, C.,* concurs in result; *Stockard, C.,* concurs.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.